IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSHUA SAIZ,

　　　　Plaintiff,

　　vs.　　　　　　　　　　　　　　No. 15-CV-587 JCH-WPL

GERMAN FRANCO, individually;
JOHN DOE CORRECTIONS EMPLOYEES 1-4
in their individual capacities;
and the STATE OF NEW MEXICO,

　　　　Defendants.

## GERMAN FRANCO'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

COMES NOW the Defendant Warden German Franco, by his undersigned attorney, pursuant to Fed.R.Civ.P. 56, and respectfully moves the Court for summary judgment as to Counts I, II and IV of the First Amended Complaint to Recover Damages for Deprivation of Civil Rights and State Law (Doc. 18)("Complaint").　These claims allege violations by Defendant of Plaintiff's rights under the Fourteenth, Eighth and Fourteenth, and First Amendments, respectively, to the United States Constitution.[1]

THE GROUNDS for this motion are that as demonstrated herein, there is no genuine issue as to any material fact and the undisputed evidence shows that Warden German Franco had no knowledge of or personal involvement in any of the alleged acts, and that in his individual capacity, he therefore is entitled to qualified immunity and judgment as a matter of law.

---

[1] Plaintiff has sued "John Doe Corrections Employees 1-4 in their individual capacities" but as of the date of this motion, such persons have neither been identified nor served with process.

## STANDARD OF REVIEW
### Summary Judgment in General

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues to justify a trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

The nonmoving party cannot rest on mere denials, or simply show that one or more facts are disputed; the dispute must be "genuine" and must involve "material" facts.  Material facts are "facts that might affect the outcome of the suit under the governing law" and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Moreover, disputes about material facts must be "genuine" to prevent entry of summary judgment; that is, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party."  Id.  And it is clear that summary judgment is not a "disfavored procedural shortcut," but rather is "an integral part of the Federal Rules as a whole," Celotex Corp., supra, 477 U.S. at 327.

In addition, mere conclusions, speculation, conjecture or surmise cannot prevent summary judgment.  See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991); Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1170 (10th Cir.), cert. denied 525 U.S. 1054 (1998).

-2-

### Qualified Immunity

Once an individual defendant asserts qualified immunity (as is the situation here), the burden shifts and the plaintiff must come forward with sufficient evidence to establish two prongs: that the defendant's alleged conduct violated the law, and that the law violated was clearly established when the violation occurred. Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645-646 (10th Cir. 1988). The Court may determine the two issues in any order. See, e.g. Christensen v. Park City Municipal Corp., 554 F.3d 1271, 1277 (10th Cir. 2009).

### STATEMENT OF UNDISPUTED MATERIAL FACTS

The attached affidavits of Michelle Boyer, Cathleen Catanach, German Franco, Larry Phillips, Andrew Wagner, and Claire Welch, and the attached exhibits, demonstrate that the following facts are undisputed.

1.  Defendant German Franco, who has been sued in his individual capacity ("Warden Franco") has served as Acting Warden of the Penitentiary of New Mexico since February 2013, and as Warden since August 2013. In that capacity, Warden Franco supervises approximately 370 staff members and oversees approximately 864 inmates who are incarcerated at the penitentiary. See Exhibit A, ¶ 2.

2.  By judgments, sentences and orders entered May 2, 2012, the State of New Mexico District Court for the County of San Juan convicted Joshua Saiz ("Plaintiff") of the felony of escape or attempt to escape from jail, and revoked his probation as to

-3-

previous felony convictions for residential burglary and larceny over $500. The court sentenced Plaintiff to the custody of the New Mexico Corrections Department ("NMCD") for a term of four years of incarceration, followed by two years of parole, and a concurrent sentence of eighteen months. See Exhibit B, ¶ 4; Ex. B-1.

3.    Plaintiff was processed at the NMCD Diagnostic Center on or about May 10, 2012, and began serving his sentence at the Penitentiary of New Mexico, in Santa Fe. See Exhibit B, ¶ 5.

4.    On May 27, 2013, Plaintiff, who was housed in L Pod in Level V (the second-highest security classification) was charged by Corrections Officers with participation in a group inmate assault on another inmate in L Pod, with the assailants punching and kicking the victim, and requiring the use of riot gas to quell the altercation. The victim received three puncture wounds in his upper abdomen, resulting in a collapsed lung that required emergency surgery at the hospital. See Exhibit A, ¶ 4; Ex. A-1 (Inmate Misconduct Report and statements).

5.    As a result of the May 27, 2013 incident, Plaintiff was charged with various major level misconducts including assault or battery with a weapon, engaging in a riot, and (because the assailants were alleged members of a prison gang) engaging in security threat group activity, all of which charges constituted the most serious Category A offenses under the prison policies governing inmate discipline. See Exhibit A, ¶ 4.

6.    An evidentiary hearing on the misconduct charges was conducted on June 13, 2013, before Hearing Officer Andrew Wagner. Plaintiff was given notice of the hearing and an opportunity to

attend and participate, which he did, along with the assistance of his chosen representative, an inmate advocate.  At the hearing, among other procedural aspects, Plaintiff was permitted to call witnesses and submit questions to them through the Hearing Officer; Plaintiff was permitted to make a statement; and Plaintiff was allowed to make motions and raise issues for the Hearing Officer's consideration.  Ultimately, the Hearing Officer dismissed some of the charges but found Plaintiff guilty of three misconduct charges. The Hearing Officer recommended that Plaintiff's good-time credits be forfeited and that he be placed in disciplinary segregation in Level VI (the highest).  See Exhibit A, ¶ 4; Ex. A-1; Ex. E, ¶ 4.

7.   In accordance with the NMCD policy governing discipline, Plaintiff thereafter appealed the decision to Acting Warden Franco. See Exhibit A, ¶ 4.

8.   On or about July 1, 2013, Warden Franco upheld the decision of the Hearing Officer imposing on Plaintiff the loss of all good-time credit, and recommending disciplinary segregation in a Level VI unit.  By policy, decisions regarding classification of inmates, including involuntary placement in Level V or Level VI, are made by a Classifications Committee on which the Warden is not a member.  See Exhibit A, ¶¶ 4-5; Exhibit A-1 (Report of Disciplinary Appeal, Hearing Officer's Disciplinary Decision, and Inmate Misconduct Report regarding Plaintiff).

9.   Until approximately November 2015 (after the civil action at bar had been filed), Warden Franco did not know that Plaintiff in 2013 had filed an appeal of the Warden's decision to the

Secretary of NMCD, and also did not know about any action taken by the Secretary or his designee with respect to Plaintiff's appeal. See Exhibit A, ¶ 6; see Exhibit D, ¶¶ 9-10; Exhibit C, ¶¶ 8-9.

10.   Until approximately November 2015 (after the civil action at bar had been filed), Warden Franco did not know that Plaintiff in 2014 had filed a petition for writ of habeas corpus.   See Exhibit A, ¶ 7.

11.   Unbeknownst to Warden Franco, Plaintiff submitted a Disciplinary Appeal dated August 9, 2013 to the Secretary of Corrections, by which Plaintiff sought review by the Secretary of the discipline against him that had been upheld by Warden Franco on or about July 1, 2013.   See Exhibit A, ¶ 6; Exhibit D, ¶ 5; see also Exhibit D-2 (Disciplinary Appeal).

12.   Under NMCD's policy regarding inmate discipline, inmates have the right to appeal to the Warden of their facility any disciplinary decision made by a Hearing Officer.   Thereafter, in the discretion of the Cabinet Secretary of NMCD, and upon application by an inmate, the inmate may seek review of the Warden's decision by the Secretary or his designee. See Exhibit D, ¶ 4.

13.   Such discretionary appeals to the Secretary in 2013 were handled by Larry Phillips, Statewide Grievance-Appeals Coordinator for NMCD, who made recommendations to the Secretary's designee for such matters, the Director of Adult Prisons.   Such appeals are based solely on review of the written record. Mr. Phillips handles all appeals from NMCD's eleven adult prison facilities, and he

-6-

handles approximately 1,500 such appeals per year.  See Exhibit D, ¶¶ 2, 4.

14.  Mr. Phillips received Plaintiff's appeal on or about August 20, 2013 and docketed it as Disciplinary Appeal S-13-05-36A. He reviewed the disciplinary report and all exhibits, and then drafted a written recommended decision granting the appeal, for consideration by Joni Brown, Deputy Director of Adult Prisons for the NMCD, acting on behalf of Jerry Roark, Director, who handled these matters on behalf of the Cabinet Secretary.  Ms. Brown signed the decision on August 27, 2013, and returned the original signed document to Mr. Phillips for further handling.  See Exhibit D, ¶ 5; see Exhibits D-1 (appeal), D-2 (decision granting appeal).

15.  As stated on Exhibit D-2, the basis for the granting of Disciplinary Appeal S-13-05-36A was "procedural errors" rather than on any lack of evidence supporting Plaintiff's participation in the group attack on another inmate, or other substantive reason. Specifically, the pertinent NMCD policy required that an inmate charged with rule violations shall be given a copy of the disciplinary report no less than 24 hours prior to the hearing, and this did not occur with respect to Plaintiff.  However, the record reviewed by Mr. Phillips reflected that Plaintiff had been given notice of the hearing and an opportunity to attend and participate, and that he had done so, and that he had been permitted to call and submit questions to witnesses, to make a statement, to make motions and bring up other issues for the Hearing Officer's consideration, and had the assistance of his representative, an inmate advocate.

See Exhibit D, ¶ 6.

16.   The decision granting Disciplinary Appeal S-13-05-36A (Exhibit D-2) directed the Disciplinary Officer/Records Coordinator to clear the disciplinary report from the inmate's file and to update his good-time credits and projected release date.   See Exhibit D, ¶ 7.

17.   The decision granting Disciplinary Appeal S-13-05-36A (Exhibit D-2) did not address Plaintiff's classification and incarceration in Level VI.   That matter would have been addressed by the penitentiary's Classifications Committee in accordance with the NMCD policies regarding institutional classifications and inmate risk assessments, after the inmate's records had been updated as to his good-time credits and projected release date. See Exhibit D, ¶ 8.

18.   After receiving the signed original document back from Ms. Brown, Mr. Phillips's practice at the time would have been to keep the original document in his file (which he currently has) and send a copy of the decision to one of the Hearing Officers at the penitentiary.  Mr. Phillips handles approximately 1,500 appeals to the Secretary every year, and Mr. Phillips does not have an independent recollection of sending out this particular document (Exhibit D-2) granting Plaintiff's appeal, or to whom he sent it. Mr. Phillips would have transmitted the copy of the decision through the department's intra-agency mail, from the Central Office where he worked to the penitentiary facility.  Mr. Phillips did not make any contemporaneous notes regarding his transmittal of the

document or to whom he sent it, and he did not maintain any tracking system. Mr. Phillips is not able to testify whether the person to whom he transmitted the copy of the decision did in fact receive it. Mr. Phillips would have relied upon the recipient Hearing Officer to implement the decision, i.e., to restore forfeited good-time credits and readjust the inmate's release date. See Exhibit D, ¶ 9.

19.  Mr. Phillips would not have sent a copy of the decision to Warden Franco, Plaintiff, or anybody else, other than to one of the penitentiary Hearing Officers.  See Exhibit D, ¶ 9.

20.  Mr. Phillips never discussed with Warden Franco any aspect of Disciplinary Appeal S-13-05-36A at any time, including but not limited to the decision reversing the disciplinary report, and never had such discussions with anyone else at the facility. See Exhibit D, ¶ 10.

21.  After the actions described in No. 18 above, Mr. Phillips had no further dealings with the matter until after this lawsuit was filed by Plaintiff, when Mr. Phillips was contacted by undersigned counsel in late 2015. See Exhibit D, ¶ 11.

22.  Until on or about June 25, 2014 (see No. 37, below), Hearing Officer Andrew Wagner never received or saw a copy of the August 27, 2013 decision granting Plaintiff's appeal (Exhibit D-1), nor had anybody told him about the document itself or the decision; he was not aware of that decision.  See Exhibit D, ¶ 6.

23.  The other Hearing Officer who served at the penitentiary, Michelle Boyer, who was not involved in Plaintiff's discipline,

also did not receive a copy of the August 27, 2013 decision (Exhibit D-1).  <u>See</u> Exhibit F, ¶¶ 4-5.

24.  Plaintiff was not served with a copy of the decision (Exhibit D-1).  In mid-2014, after Plaintiff had filed a petition for writ of habeas corpus, his court-appointed public defender obtained a copy of the August 27, 2013 decision (Exhibit D-1).  <u>See</u> Exhibit B-2.

25.  On December 6, 2013, Plaintiff filed a pro se petition for writ of habeas corpus in the First Judicial District Court in Santa Fe County, State of New Mexico, against Acting Warden Franco, which the court docketed as Case No. D-101-CV-2013-03100.  The petition was a form petition completed by hand, and was verified under oath by Plaintiff.  <u>See</u> Exhibit C-1.

26.  The petition alleged that the discipline imposed on Plaintiff including forfeiture of 5 months, 17 days of good-time was excessive; that the disciplinary decision was not based on a preponderance of evidence; and that the disciplinary policies were not followed.  The petition alleged that Saiz had appealed to Acting Warden German Franco, which was denied, and that he had then appealed to the Secretary of Corrections who had "never responded." The petition sought restoration of the forfeited good-time credits. <u>See</u> Exhibit C-1, at ¶¶ 4, 5, 7, 12, 13.

27.  The form petition states on page 1, under "Instructions, Read Carefully" the following:  "Finally, you must complete the certificate of service and mail or otherwise serve copies of this petition on the respondent [Acting Warden German Franco] and the

district attorney in the county in which the petition is filed."
<u>See</u> Exhibit C-1, p. 1.

28.  The certificate of service on Exhibit C-1 is left blank.
<u>See</u> Exhibit C-1.

29.  Plaintiff's petition was not served on Warden Franco.
Warden Franco never saw the petition or any documents related to
the petition, and Warden Franco did not know or learn about the
habeas corpus proceeding until after Plaintiff had filed the
instant civil action.  <u>See</u> Exhibit A, ¶ 7; <u>see</u> Fact No. 10, above.

30.  Defense of Plaintiff's petition was handled by the
Criminal Appeals Division of the Office of the Attorney General
("AG").  The AG did not receive the petition (Exhibit C-1) from
Warden Franco or anybody at NMCD.  The AG's first notification of
the matter was when the district court transmitted to the AG an
order appointing the public defender as counsel for Plaintiff, on
or about March 4, 2014.  The district court on its own motion had
consolidated Plaintiff's petition for writ of habeas corpus with
eight petitions filed by eight other inmates.  Thereafter, the AG
downloaded the petition and other documents from the court website.
<u>See</u> Exhibit C, ¶¶ 8-9.

31.  The AG never had any communications with Warden Franco or
anybody from the Warden's office regarding this matter.  <u>See</u>
Exhibit C, ¶ 9.

32.  The AG did not litigate the substance or merits of
Plaintiff's petition for writ of habeas corpus (Exhibit C-1).  On
March 17, 2014, after joinder, the district court ordered the

-11-

public defender to file an amended petition by June 2, 2014, but the public defender subsequently obtained from the court a stipulated extension order granting an additional ninety days in which to file an amended petition. On July 14, 2014, however, before an amended petition was due to be filed, the public defender filed a notice of withdrawal of petition for writ of habeas corpus, stating that Plaintiff's good-time had been "fully restored" to him, and that there thus was no longer a live controversy related to the petition. See Exhibit C, ¶¶ 9-10.

33. The AG did not know the circumstances involved in the restoration of Plaintiff's good-time credits. See Exhibit C, ¶ 11.

34. Between the time that the AG downloaded the petition and the time that Plaintiff's public defender filed the notice of withdrawal of petition (see Fact No. 32 above), the AG took no substantive action regarding the petition, other than obtaining pertinent records such as an audiotape of the disciplinary hearing. The AG did not have any contact with the Warden or his office regarding the habeas corpus proceeding. See Exhibit C, ¶¶ 9, 12.

35. Cathleen Catanach is the Bureau Chief of the NMCD's Offender Management Bureau, which manages the inmate records for NMCD's eleven adult prisons, including records related to intake, release, parole and good time for approximately 6,700 inmates. See Exhibit C, ¶¶ 1-2.

36. On June 25, 2014, Ms. Catanach received an email letter from Assistant Public Defender Amanda Stephenson, who stated that she was representing Plaintiff in a habeas corpus proceeding. In

-12-

the email, Ms. Stephenson stated that she had received a copy of a Disciplinary Appeal in Case No. S-13-05-36 that had granted an appeal filed by Plaintiff, and that the appeal had directed the reinstatement of 5 months, 17 days of forfeited good-time credits to Plaintiff.   Ms. Stephenson also stated in the email that she recently had received a copy of the GTFS (good-time figuring sheet) for Plaintiff, and it reflected that the forfeited good-time credits had not, in fact, been restored.  Ms. Stephenson attached a copy of the document granting Plaintiff's appeal, and stated that the document "had not been previously served on the [Plaintiff]." Ms. Stephenson requested that Plaintiff's records be corrected. See Exhibit B, ¶ 6; Exhibit B-2.

37.   Within minutes of Ms. Catanach's receipt of Exhibit B-2, she forwarded the email and its attachment to Claudia Rodriguez, one of her employees, and instructed Ms. Rodriguez to review the document, make the necessary adjustments to Plaintiff's good-time, and, after his records had been corrected, to provide her with a copy of the revised GTFS.  See Exhibit B, ¶ 8; see Exhibit B-2. Ms. Rodriguez took steps to do so on that same day, June 25, 2014, by instructing the Hearing Officer, Andrew Wagner, to arrange to have the records corrected, which he promptly did.  See Exhibit B, ¶ 8; Exhibit B-3; Exhibit E, ¶ 5.

38.   On June 26, 2014, the day after Ms. Catanach received the email from Ms. Stephenson, Plaintiff's forfeited good-time credits, as well as all good-time credits he would have earned during the time he was incarcerated in the Level VI facility, in the amount of 423 days, were restored.   See Exhibit B, ¶ 10; Exhibit B-5.

39.   In her review of Plaintiff's inmate file for purposes of the lawsuit at bar, Ms. Catanach located a copy of appeal decision in Case No. S-13-05-36, bearing a stamp on the back of the document which states that it was "RECEIVED Jun 27 2014 Level VI-North Unit, Deputy Warden's Office."   The document likely was transmitted to the Deputy Warden's Office by her staff, following receipt of the June 25, 2014 email from Ms. Stephenson.   See Exhibit B, ¶ 9; Exhibit B-4 (front and back of document).

40.   At approximately the same time as his good-time credits were reinstated, Plaintiff's release eligibility date also was adjusted, and he was started on a parole plan to enable him to appear before the Parole Board to be released from custody and thereafter serve his court-ordered parole.   See Exhibit B, ¶ 11.

41.   At around the same time as NMCD corrected and reinstated Plaintiff's good-time and adjusted his release eligibility date, NMCD staff also initiated the process to reclassify Plaintiff from Level VI custody at the PNM north facility, to general population in a Level IV facility (Southern New Mexico Correctional Facility), which, by policy, requires action by the Classifications Committee. Thereafter, NMCD transferred Plaintiff to the Level IV prison, and general population, from which he was released from custody to

-14-

serve his court-ordered parole.  See Exhibit B, ¶ 12; Exhibit B-6
(Classification Committee's decision).

## ARGUMENT AND AUTHORITY

Under  42  U.S.C.  §  1983,  a  state  official  sued  in  his
individual capacity is qualifiedly immune from suit and liability
for  damages  if  his  conduct  "does  not  violate  clearly  established
statutory  or  constitutional  rights  of  which  a  reasonable  person
would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982);
see also,  Hidahl v. Gilpin County Dept of Social Services,  supra
(presumption of qualified immunity)(question of law);  see  Hovater
v. Robinson,  supra 1 F.3d at 1066 (plaintiff's burden of proof).

In their individual capacities, individual defendants "come to
court as individuals" and liability under 42 U.S.C. § 1983 may be
based only on his or her personal, individual conduct.  Hafer v.
Melo,  502  U.S.  21,  27  (1991);  Rizzo v. Goode,  423  U.S.  362,  371
(1976)  (no respondeat superior liability under § 1983).

Thus, a supervisor may be held liable under Section 1983 only
if  the  plaintiff  is  able  to  demonstrate  an  "affirmative  link"
between the violations of his or her constitutional rights, and
either the supervisor's personal participation in the violation,
the supervisor's exercise of control or direction, or a "failure"
to supervise.  See  Meade v. Grubbs, 841 F.2d 1512, 1527-28 (10th
Cir. 1988)("To be liable, a superior must have participated or
acquiesced in the constitutional deprivations of which complaint is
made")(citing  Kite v. Kelly, 546 F.2d 334, 337 (10th Cir. 1976)
(quotation  marks  omitted);  accord,  Winters v. Bd. of County

-15-

Comm'rs, 4 F.3d 848, 855 (10th Cir. 1993); Green v. Branson,
108 F.3d 1296, 1302 (10th Cir. 1997); Langley v. Adams County,
Colorado, 987 F.2d 1473, 1481 (10th Cir. 1993)(in context of
alleged violation of due process rights, supervisory liability
requires personal direction or actual knowledge and acquiescence,
citing Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir.
1992). A supervisor's liability under Section 1983 "must be
predicated on the supervisor's deliberate indifference, rather than
mere negligence." See Langley v. Adams County, Colorado, supra,
987 F.2d at 1481; Green v. Branson, supra, 108 F.3d at 1302
(plaintiff's burden met where evidence showed that the warden
himself had been told about the "ruthless and vicious assault" on
plaintiff and the plaintiff's resulting severe injuries including
losing the ability to speak, and the warden also had been told that
"he needed to go up and see" the badly brutalized plaintiff but
failed to do so, and instead "did nothing").

    This core principle of Section 1983 law applies in the context
of prisoner lawsuits against prison officials, and it is clear that
negligent acts cannot constitute the basis for liability. See,
i.e., Daniels v. Williams, 474 U.S. 327 (1986)(prisoner's suit
under 42 U.S.C. § 1983 based on procedural due process violation);
Davidson v. Cannon, 474 U.S. 344 (1986)(prisoner's suit under
Section 1983 based on substantive due process violation; prisoner
alleged deprivation of protected liberty interest); Wolff v.
McDonald, 418 U.S. 539 (1974)(denial of prison good-time credits);
see also Farmer v. Brennan, 511 U.S. 825 (1994)(prisoner assaults

by fellow inmates; deliberate indifference required); <u>Estelle v.</u> <u>Gamble</u>, 429 U.S. 97 (1976)(prisoner lawsuit under § 1983 alleging Eighth Amendment violation based on deficient prison medical care; deliberate indifference required); <u>Wilson v. Steiter</u>, 501 U.S. 294, 302 (1991)(Eighth Amendment claims; prison confinement conditions; deliberate indifference required).

"Deliberate indifference" in the prison context has both an objective and a subjective component: the prison official must be aware of the facts from which an inference of constitutional harm could be drawn, <u>and</u> he or she also must in fact draw the inference; an official's failure to take action that he or she should have perceived, but did not, is not actionable under 42 U.S.C. § 1983. See <u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. 837-38 (Eighth Amendment liability requires proof of the official's subjective "consciousness" of the risk of constitutional injury); <u>Green v.</u> <u>Branson</u>, <u>supra</u>; <u>and see also, i.e.</u> <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) ("deliberate indifference is a stringent standard of fault, requiring proof that [the defendant] disregarded a known or obvious consequence of his action"). Moreover, conclusory allegations regarding "deliberate indifference" are insufficient; there must be evidence. See <u>Langley v. Adams County</u>, 987 F.2d 1473, 1481 (10th Cir. 1993). A prison official cannot be held liable based on a showing that a particular risk of harm was obvious and that a reasonable official would have known about it; the prison official must be aware of the risk. <u>Farmer v. Brennan</u>, <u>supra</u>, 511 U.S. at 842.

-17-

Here, the undisputed evidence shows that Warden Franco is entitled to qualified immunity and summary judgment.

The evidence demonstrates that Warden Franco's role in the situation involving the imposition of discipline against Plaintiff, and the subsequent events, was minimal: on or about July 1, 2013, he reviewed and upheld the decision of the Hearing Officer imposing on Plaintiff the loss of all good-time credit, and recommending disciplinary segregation in a Level VI unit. See Fact No. 8. Subsequently, Warden Franco had no knowledge of or participation in the appeal by Plaintiff to the Secretary of Corrections, which reversed the discipline. Warden Franco--who oversees 370 employees and approximately 864 inmates--did not ever learn about the appeal until about November 2015, when Plaintiff filed the instant action and long after Plaintiff had been released from custody on parole. He did not see, or learn about, the decision, until that time. See Facts Nos. 9, 19, 20. Moreover, the evidence is undisputed that Warden Franco also did not know that Plaintiff had filed a petition for writ of habeas corpus, or anything about that proceeding, until after the civil case was filed in 2015. See Facts Nos. 10, 29-31, 34.

Whatever went inadvertently wrong with the attempted transmission of the August 27, 2013 decision upholding Plaintiff's appeal, from a Statewide Grievance-Appeals Coordinator housed in the Central Office to one of the Hearing Officers at the penitentiary, did not involve the Warden in any way, shape or form. The undisputed facts simply fail to show any "affirmative link"

between any violation of Plaintiff's constitutional rights, and any knowledge, personal participation or acquiescence by Warden Franco; there can be no showing of "deliberate indifference" where the Warden was not even aware of the appeal or its results. Thus, there is no liability on the Warden in his individual capacity. See Meade v. Grubbs, supra; Kite v. Kelly, supra; Winters v. Bd. of County Commissioners, supra; Green v. Branson, supra; Langley v. Adams County, Colorado, supra; Woodward v. City of Worland, supra.

## CONCLUSION

The undisputed evidence shows that Warden German Franco is entitled to qualified immunity and summary judgment, and the Court therefore should grant the motion at bar and dismiss with prejudice Counts One, Two and Four of the Complaint as to Defendant in his individual capacity.

Respectfully submitted,

/s/ Michael Dickman
MICHAEL DICKMAN
Post Office Box 549
Santa Fe, NM 87504
(505) 989-9360
Attorney for Defendants
German Franco and
State of New Mexico

## CERTIFICATE OF SERVICE

I certify that I caused copies of this motion
to be electronically served on
all counsel of record
at their respective email addresses as registered on CM/ECF
on the date of filing hereof

/s/ Michael Dickman
MICHAEL DICKMAN

-19-