# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSHUA SAIZ,

      **Plaintiff,**

vs.                                 No. 1:15-cv-00587-JCH-WPL

GERMAN FRANCO, individually;
JOHN DOE CORRECTIONS
EMPLOYEES 1-4 in their
individual capacities; and the
STATE OF NEW MEXICO,

      **Defendants.**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GERMAN FRANCO'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. 23)

Plaintiff, by and through his attorneys, Rachel E. Higgins and Kari Morrissey, hereby submits his *Response in Opposition to Defendant German Franco's Motion for Summary Judgment Based on Qualified Immunity* (Doc. 23). Defendant Franco moves for summary judgment as to Counts 1, 2 and 4 of the Amended Complaint herein (Doc. 18) essentially based on his claim that he lacked personal participation in the events that gave rise to Plaintiff's suit. The Court should deny his motion because genuine issues of material fact concerning personal participation prevent the entry of summary judgment. Alternatively, Defendant's motion is premature under Federal Rule of Civil Procedure 56(d) because Plaintiff requires discovery in order to defend against the motion.

## I.    Plaintiff's Supplemental Undisputed Material Facts

Pursuant to Local Rule 56.1(b), Plaintiff supplements Defendant's Statement of Undisputed Material Facts with the following Supplemental Undisputed Material Facts.

A. Following the assault on inmate Beau Musacco on May 27, 2013, corrections officers on duty decided to charge Plaintiff and every other inmate that was in the Level IV pod at the time of the assault with the major conduct violation of assault, despite video surveillance which fails to demonstrate the participation of Plaintiff and the other inmates. *See, Plaintiff's Ex. 5, Video Produced by Corrections Dept. to Plaintiff's Public Defender.*

B. Plaintiff and every other inmate in his pod charged with the major conduct violation of assault were found guilty of assault, and were punished by suffering a forfeiture of good time, and by being placed in interim level VI segregation, followed by level VI disciplinary segregation in PNM North (solitary confinement). *See, Plaintiff's 6-A, Saiz Inmate File, p. 54.*

C. Since he reviewed and approved the hearing officer's decision, Defendant Franco personally participated in the events which led to Plaintiff's placement in solitary confinement, and in Plaintiff's loss of good time. *See, Doc. 23-1, Defendant's Ex. A, ¶4.*

D. Plaintiff appealed Defendant Franco's decision affirming the Hearing Officer's disciplinary order to the Secretary of Corrections, but he heard nothing from Penitentiary of New Mexico ("PNM") employees about the outcome of his appeal. *See, Plaintiff's Ex. 1, Affidavit of Plaintiff Joshua Saiz, ¶¶ 11, 12, attached hereto; Doc. 23-4, Defendant's Ex. D-2.*

E. Plaintiff asked employees of PNM repeatedly about the outcome of his appeal, but was told that no response meant his appeal had been denied. *Plainitff's Ex. 1, at ¶ 12.*

F. Not knowing that his appeal had been successful, Plaintiff followed the process

implemented by PNM for filing a Petition for a Writ of Habeas Corpus. *Id., at ¶ 13.*

G.  Using a form provided by a PNM legal assistant, Plaintiff filled in the Petition by hand.  He cannot recall whether he made additional copies by hand, or paid to have the original copied, but was aware he needed more than one copy. *Id.; Doc. 23-3, Defendant's Ex. C-1.*

H.  When Plaintiff completed the Petition, it was notarized by a PNM legal assistant, who came to Plaintiff's cell and witnessed Plaintiff's signature on October 28, 2013. *Plainitff's Ex. 1, at ¶ 13.*

I.  Following the process implemented by PNM, either on the same day or the day after his signature was notarized, Plaintiff put copies of the Petition in envelopes addressed to the court and the Warden, and gave the envelopes to whichever PNM employee was available to take them. *Id., ¶ 14.*  The Petition is endorsed as filed on December 6, 2013, over one month after Plaintiff's signature was notarized. *Doc. 23-3, Defendant's Ex. C-1.*

J.  Eight other inmates who were found guilty of the same major conduct offense of assault on inmate Beau Musacco and appealed the adverse decisions which were presumably reviewed and approved by Defendant Franco per policy, filed petitions for writ of habeus corpus concerning the reasons for and conditions of their confinement during the same timeframe. *See, Plaintiff's Ex. 4-A through 4-I, New Mexico District Court docket sheets reflecting individual habeas filings.*

K.  Plaintiff's Petition for a Writ of Habeas Corpus was joined with those of the eight other inmates, who along with Plaintiff had been disciplined for the incident in PNM's L-Pod on May 27, 2013. *Doc. 23-3, Defendant's Ex. C-2, Ex. C-3; Plaintiff's*

*Ex. 2, Affidavit of Amanda Stephenson, ¶ 4.*

L. Appeals to the Secretary of Corrections made by Plaintiff and possibly inmate Gonzales were granted in August, 2013. *Doc. 23-4, Defendant's Ex. D-1.* Decisions granting the disciplinary appeals of the other seven inmates appear to have been made on or after June 25, 2014. *Plaintiff's Ex. 2, ¶ 8.*

M. Plaintiff was not told that his appeal had been successful, and his disciplinary order overturned, until he was informed of this by his Public Defender, Amanda Stephenson, on or about June 25, 2014. *Plaintiff's Ex. 1, at ¶ 16; Plaintiff's Ex. 2, ¶ 8.*

N. Ms. Stephenson received the disciplinary order granting Plaintiff's appeal on June 25, 2014, from the New Mexico Attorney General's Office, counsel for Defendant Franco. *Plaintiff's Ex. 2, ¶ 9.* The decision granting Plaintiff's appeal was dated August 27, 2013. *Id.*

O. Claire Welch, the Paralegal – Habeas Administrator for the New Mexico Attorney General's Office states in her affidavit that she dealt with Claudia Rodriguez at the Corrections Department's Offender Management Bureau in order to obtain documents relating to the Plaintiff's disciplinary hearing. *Doc. 23-3, Defendant's Ex. C, ¶ 12.* Ms. Welch does not say whether the decision granting Plaintiff's appeal was among the documents received from Ms. Rodriguez. *Id.*

P. Both the Attorney General's Office and Ms. Stephenson contacted Department of Corrections Records to have Plaintiff's good time credits restored after receiving the decision granting Plaintiff's appeal. *Id., ¶ 11.*

Q. The affidavit of Cathleen Catanach, Bureau Chief of the Offender Management

Bureau for the Corrections Department, suggests that the first time she saw the decision granting Plaintiff's appeal was when she received a copy from Ms. Stephenson on or about June 25, 2014. *Doc. 23-2, Defendant's Ex. B, ¶¶ 6, 8.* She states that upon receiving it, she immediately asked Ms. Rodriguez to begin the process to restore Plaintiff's good time. *Id.*

R. The affidavit of Ms. Catanach suggests that she did not review Plaintiff's facility inmate file in original, but rather was shown an inmate file "for purposes of this lawsuit." *Id., ¶ 9.*

S. None of the affidavits supplied by Defendant Franco explain how or through whom Plaintiff's Disciplinary Appeal, granted by the Secretary of Corrections on August 27, 2013, of which Defendant Franco and employees of the Department of Corrections claim or appear to have been unaware until on or about June 25, 2014, was produced to the New Mexico Attorney General's Office, although the source has to have been the Department of Corrections.

T. Plaintiff's Petition for Writ of Habeas Corpus was joined to those of eight other inmates who also had filed Petitions for Writs of Habeas Corpus, against Defendant German Franco. *Doc. 23-3, Defendant's Ex. C-3, Amended Order of Joinder.* The nine petitions were filed in Santa Fe District Court on and between October 29, 2013, through March 12, 2014. *Plaintiff's Ex. 4-A through 4-I attached hereto.* Eight of the petitions were dismissed by way of stipulation on and between July 21, 2014, through August 6, 2014. *Id.*

U. Internal documents from Defendant State of New Mexico, dated June 20, 2014 (five days before the affidavit of Ms. Catanach says she was alerted to the fact of Plaintiff's

successful appeal by Ms. Stephenson, Plaintiff's public defender) indicate that "Inmate Joshua Saiz has been granted his appeal and is to be released from Level VI to General Population." Thus, it would appear that Defendant State of New Mexico did have knowledge of the Plaintiff's successful appeal and decided to stop punishing Plaintiff by housing him in Level VI disciplinary segregation (solitary confinement) as the sole and direct result of the appeal. *Plaintiff's Ex. 6-B, pp. 69-75, Saiz Inmate File.*

V. A hearing was held by an unknown hearing officer on June 23, 2014, notice of which was provided on June 19, 2014, by an unknown initiating employee, in which the decision of the hearing officer was approved by the Warden or his designee, "that Inmate Joshua Saiz had been granted his appeal of Level VI Status and is to be released from Level VI to General Population per DDAP Anthony Romero." *Plaintiff's Ex. 6-C, pp. 77-78.* Though the document includes a materially incorrect date as to the alleged assault, indicating it occurred on February 13,2014, instead of on May 27, 2013, it appears to confirm that members of the Corrections Department knew about Plaintiff's successful appeal prior to being told by Plaintiff's public defender. *Id.*

**<u>Plaintiff's Response to Defendant's Statement of Undisputed Material Facts</u>**

Defendant Franco files his Motion for Summary Judgment on the Basis of Qualified Immunity before any discovery has been done in this case. In support of his Undisputed Material Facts ("UMFs"), Defendant Franco has attached his own affidavit, and affidavits obtained from employees of the New Mexico Department of Corrections and the New Mexico

Attorney General's Office. Plaintiff has had no opportunity to depose any of these persons, or to depose any other persons who could challenge or supplement the information in Defendant's affidavits. Plaintiff, therefore, is unable to admit or dispute a number of Defendant's UMFs for lack of sufficient information.

1. Plaintiff admits that Defendant Franco was the Acting Warden and the Warden from February, 2013 on. Plaintiff lacks sufficient information to admit or dispute the remainder of UMF No. 1, and disputes it as immaterial.

2. Admit.

3. Admit.

4. Admit that Plaintiff was charged with participating in an assault on another inmate, but dispute that he and every other inmate in the pod actually participated in said assault. *See, Plaintiff's Ex. 5, Video produced by Corrections Department to Plaintiff's Public Defender.* Admit that Plaintiff was charged as described.

5. Admit that an evidentiary hearing was held on June 13, 2013, before Hearing Officer Andrew Wagner, but dispute that Plaintiff received sufficient due process as required by the Corrections Department. The Adult Director of Prisons reversed the discipline based on a defect in procedure. *Doc. 23-4, Defendant's Ex. D-1.* Admit that the Hearing Officer recommended that Plaintiff's good-time credits be forfeited and that he be placed in disciplinary segregation in Level VI. *Doc. 23-1, Defendant's Ex. A-1, p. 5.*

6. Admit.

7. Admit that Defendant Franco reviewed and approved the disciplinary decision of the Hearing Officer on or about June 17, 2013. Disputed that the disciplinary decision was not connected to the decision to classify Plaintiff in level VI disciplinary segregation.

*See, Plaintiff's Ex. 6-B, pp. 69-75, Saiz Inmate File.*

**8.**   Plaintiff is without sufficient information to admit or dispute that Defendant Franco did not know until November, 2015, that Plaintiff had successfully appealed his decision to the Secretary of Corrections.   *See, Plaintiff's Ex. 3, Rule 56(d) Affidavit of Rachel Higgins, ¶¶ 3, 4.*

9.   Plaintiff is without sufficient information to admit or dispute that Defendant Franco did not know that Plaintiff had filed a Writ of Habeas Corpus until November, 2015, but it defies belief, and suggests deliberate indifference, for Defendant Franco to claim that he was not aware of the fact that eight other inmates filed habeas petitions concerning the same incident, each of whom named him as the respondent.   *Id., ¶ 3.*

10.   Plaintiff is without sufficient information to admit or dispute that Defendant Franco did not know that Plaintiff submitted a Disciplinary Appeal dated August 9, 2013, to the Secretary of Corrections, seeking review of Defendant's approval of the disciplinary action recommended by the Hearing Officer, but, again, it defies belief, and suggests deliberate indifference, for Defendant Franco to claim he was unaware of the fact that eight other inmates filed appeals concerning their discipline for the same incident.   *Id., ¶ 9.*

11.   Plaintiff is without sufficient information to admit or dispute whether this is the policy of the Department of Corrections regarding inmate discipline, or whether it is followed in practice.   *Id., ¶ 8.*

12.   Admit that the Larry Phillips states in his affidavit that he was the Statewide Grievance-Appeals Coordinator for the NMDC at the time Plaintiff appealed his discipline to the Secretary of Corrections.   However, Plaintiff is without sufficient information to admit or

dispute that this is the procedure used by the Department of Corrections, or that this procedure was followed by Mr. Phillips generally, or specifically in Plaintiff's case. *Id., ¶ 7.*

13. Admit that the copy of Joni Brown's decision granting Plaintiff's Appeal attached to Mr. Phillips' affidavit is stamped "Received August 20, 2013." Plaintiff is without sufficient information to admit or dispute the remainder of UMF No. 14. *Id., ¶ 7.*

14. Admit that the form granting Plaintiff's disciplinary appeal noted procedural errors in the handling of Plaintiff's disciplinary hearing, specifically that Plaintiff was not given a copy of the disciplinary report at least 24 hours prior to his hearing. Plaintiff disputes that the rights Plaintiff allegedly could exercise were sufficient to overcome this procedural error. Plaintiff also disputes the inference that because his disciplinary action was overturned on procedural error, he was guilty of the charges. *See, Plaintiff's Ex. 5, Video produced by Corrections Dept. to Plaintiff's Public Defender; Plaintiff's Ex. 6-B, 6-C.*

15. Admit that the Disciplinary Appeal decision stated that "the disciplinary officer/records coordinator at PNM will be instructed to clear the report out of your file and update the goodtime along with readjusting your PRD date." Plaintiff lacks sufficient information to admit or dispute whether this directive was part of a PNM policy or procedure, and whether or how it was to be carried out. *Plaintiff's Ex. 3, ¶ 8.*

16. Admit that the Disciplinary Appeal decision did not address Plaintiff's classification and incarceration in Level VI, but dispute that the classification was based on anything other than the discipline imposed as a result of the hearing officer's decision that Plaintiff was guilty of assaulting inmate Beau Musacco. *See, Plaintiff's Ex. 6-B, pp. 69-75, Ex. 6-C,*

*77-78, Saiz Inmate File.* Plaintiff lacks sufficient information to admit or dispute that the procedure described in the remainder of UMF No. 17 was a policy or procedure in effect, or how it was to be carried out, and disputes that this material. *Plaintiff's Ex. 3, ¶ 8.*

17. Plaintiff lacks sufficient information to admit or dispute what Mr. Phillip's practice would have been upon receiving the Disciplinary Appeal Decision concerning Plaintiff's appeal, or whether his practice comported with existing PNM policies and procedures. *Id.*

18. Plaintiff lacks sufficient information to admit or dispute whether Mr. Phillips generally would have sent the Disciplinary Appeal Decision to Defendant Franco, or whether this comported with existing PNM policies and procedures. *Id.*

19. Plaintiff lacks sufficient information to admit or dispute Mr. Phillips' statement that he did not discuss any aspect of Plaintiff's appeal with Defendant Franco or anyone at the Penitentiary. *Id, ¶ 7.*

20. Plaintiff lacks sufficient information to admit or dispute that Mr. Phillips had no further involvement with Plaintiff's appeal until after Plaintiff filed his lawsuit herein. *Id.*

21. Admit that Hearing Officer Andrew Wagner states in his affidavit that he never received or saw a copy of the Disciplinary Appeal Decision until on or about June 25, 2014, but dispute that others within the Department lacked knowledge of the Appeal Decision. *See, Plaintiff's Ex. 6-B, pp. 69-75, Ex. 6-C, pp. 77-78, Saiz Inmate File.*

22. Admit that Hearing Officer Michelle Boyer states in her affidavit that she did not receive a copy of the Disciplinary Appeal Decision dated August 27, 2013, but dispute that others within the Department lacked knowledge of the Appeal Decision. *Id.* Plaintiff cannot admit or dispute that Hearing Officer Boyer was not involved in Plaintiff's discipline for

lack of sufficient information. *Plaintiff's Ex. 3, ¶ 8.*

23. Admit that Plaintiff's pro se Petition for Writ of Habeas Corpus was filed in state district court on December 6, 2013, as described in UMF No. 25, but Plaintiff lacks sufficient information to explain how his Petition, signed and notarized on October 28, 2013, was not filed in state district court until December 6, 2013, due to an inability to conduct discovery on the process through which service of inmate documents are facilitated on behalf of inmates in solitary confinement. *Id., ¶ 12.*

24. Admit.

25. Admit that the form Petition had instructions regarding certificates of service, mailing and serving copies on the respondent, but Plaintiff lacks sufficient information to admit or dispute the effect of this due to an inability to conduct discovery on the process through which service of inmate documents are facilitated on behalf of inmates in solitary confinement. *Id.*

26. Admit that the certificate of service on Plaintiff's Petition is blank, but Plaintiff lacks sufficient information to admit or dispute the effect of this due to an inability to conduct discovery on the processes through which service of inmate documents are facilitated on behalf of inmates in solitary confinement. *Id.*

27. Plaintiff lacks sufficient information to admit or dispute that Defendant Franco was unaware of the Plaintiff's Petition for a Writ of Habeas Corpus until after Plaintiff filed the civil action herein, but notes that Plaintiff's writ was one of nine petitions arising out of the same operative facts, thus defying belief that Defendant Franco, as the named Respondent, could be unaware of Plaintiff's and the others' actions against him. *Id., ¶ 3.*

28. Admit.

29. Plaintiff lacks sufficient information to admit or dispute that Defendant Franco was unaware of the existence of Plaintiff's petition for a writ of habeas corpus until November, 2014. *Id.,* ¶ 3.

30. Admit.

31. Admit that Claire Welch, paralegal for Habeas matters at the Office of the Attorney General, states that she did not know the circumstances involved in the restoration of Plaintiff's good time credits, but dispute that this is material.

32. Admit that Claire Welch, paralegal for Habeas matters at the Office of the Attorney General, states that the records she maintains show no contact with Defendant Franco or his office regarding Plaintiff's writ of habeas corpus, but dispute that this is material.

33. Admit that Cathleen Catanach describes herself in her affidavit as the Bureau Chief of the Corrections Department Offender Management Bureau, which manages inmate records relating to intake, release, parole and good time.

34. Admit that on June 25, 2014, Ms. Catanach states she received from Plaintiff's Public Defender a copy of the document granting Plaintiff's appeal to the Secretary of Corrections, reinstating his good time, but dispute that this was the first time this information regarding Defendant's successful appeal was known by Defendant State of New Mexico. *Plaintiff's Ex. 6-B, pp. 69-75, Ex. 6-C, pp. 77-78, Saiz Inmate File.*

35. Admit that on June 25, 2014, Ms. Catanach states she asked Corrections Department employee Claudia Rodriguez to make necessary adjustments to Plaintiff's good time based on the document received from Plaintiff's Public Defender.

36. Admit that by June 26, 2014, all Plaintiff's good time was restored. Plaintiff suffered an additional year of incarceration due to the errors and omissions of Defendants.

37. Plaintiff is without sufficient information to admit or dispute that a copy of the appeal decision "likely was transmitted to the Deputy Warden's office by [Ms. Catanach's] staff after Ms. Catanach received the appeal decision from Plaintiff's Public Defender." Ms. Catanach's affidavit indicates she reviewed an "inmate file for the purposes of this lawsuit," which suggests she has not reviewed the original facility inmate file. *Doc. 23-2, Defendant's Ex. B, ¶9.*

38. Admit that at approximately the same time as his good time credits were reinstated, Plaintiff's release eligibility date (which had passed as a result of the error) was adjusted, and he was started on a parole plan.

39. Admit that in a document dated June 23, 2014, Corrections Department staff noted that Plaintiff was to be released from Level VI custody to general population.

## Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Tenth Circuit Court of Appeals defines a disputed fact as material "… if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citations omitted). "The burden of establishing the non-existence of a 'genuine issue' is on the party moving for summary judgment." *Dye v. United States*, 121 F.3d 1399, 1409 (10th Cir. 1997) (citations omitted). The court should "… construe the factual record and reasonable inferences therefrom in the light most favorable to the non-movant." *Muskogee,* 119 F.3d at 839-40 (citations omitted).

In moving for summary judgment based on qualified immunity, Defendant Franco seeks to immunize his actions, or failures to act, in Plaintiff's case because he states that as the Warden of the Penitentiary of New Mexico he was not involved in, or informed about, Plaintiff's successful appeal of Defendant Franco's decision, nor of Plaintiff's petition for a writ of habeas corpus. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). Once Defendant Franco raises the issue of qualified immunity, the Plaintiff has the burden of showing that Defendant Franco violated his constitutional rights, and that those rights were clearly established at the time of the Defendant's conduct. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009), *citing Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). There is no question that Plaintiff's constitutional rights were violated when he was not released from solitary confinement after his appeal was granted in August, 2013. At issue in this case is whether Defendant Franco can be held liable under 42 U.S.C. § 1983 as an individual or as a supervisor for the actions of his subordinates.

As a preliminary matter, Defendant Franco was clearly involved in Plaintiff's disciplinary appeal, as he reviewed the decision to discipline him, take away his good time, and send him to Level VI solitary confinement. He approved the decision personally. These uncontested facts, alone, should allow Plaintiff's lawsuit to go forward, allowing discovery to be conducted as to Defendant Franco's obligations in regards to the review and approval process, especially in this case, where nine inmates' disciplinary sentences were appealed and overturned. With regard to Defendant Franco's participation in any policies and procedures which led to the violation of Plaintiff's rights and his damages, "a supervisor can be liable under § 1983 if he (1)

promulgated, created, implemented or possessed personal responsibility for the continued operation of a policy that (2) caused the complained-of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation." *Dodds v. Richardson*, 614 F.3d at 1195; *Wilson v. Montano,* 715 F.3d 847, 856 (10th Cir. 2013); *see also Webb v. Thompson*, 2016 U.S. App, *12, LEXIS 5555 (Tenth Circuit, March 22, 2016). "A supervisor's promulgation, creation, implementation, or utilization of a policy that caused a deprivation of a plaintiff's rights could constitute sufficient personal involvement." *Dodds v. Richardson*, 614 F.3d at 1195. Moreover, the Tenth Circuit has held that personal involvement "… does not require direct participation because § 1983 states '[a]ny official who causes' a citizen to be deprived of his or her constitutional rights can also be held liable." *Id. (citations omitted).* To show personal participation, it is enough for Plaintiff to demonstrate that Defendant Franco exercised control or direction over his subordinates or failed to supervise them. *Id.* Obviously, Plaintiff cannot determine Franco's control or direction over the subordinates involved in this case, whomever they may be, unless Plaintiff can conduct discovery to determine which actors were involved in the failed process that resulted in Plaintiff being incarcerated in disciplinary segregation (solitary confinement) a year longer than he should have been. Plaintiff also needs to conduct discovery to determine the nature and extent of Defendant Franco's involvement in the implementation and utilization of the policies and/or practices that failed Plaintiff and apparently eight other similarly situated inmates.

The factors necessary to establish a supervisor's violation of § 1983 "depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id.,* at 1205. Where the constitutional right at issue is substantive or procedural due process, deliberate indifference is "a sufficiently culpable mental state to impose supervisory

liability [for prolonged detention claims] under § 1983." *Wilson v. Montano*, 715 F.3d at 858. For purposes of the Eighth Amendment to the Constitution, the culpable mental state for supervisory liability is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious harm to the prisoner's future health. *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *see also, Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (prisoner must show defendant knew he faced a substantial risk of harm and disregarded that risk by failing to take measure to abate it). Moreover, the official must be aware of facts from which inferences could be drawn and must draw the inferences and must disregard the risk of harm. *Id.*, citing *Farmer v. Brennan,* 511 U.S. at 837.

<u>**Argument and Authorities**</u>

**A. Genuine Issues of Material Fact Prevent the Entry of Summary Judgment**

Defendant Franco alleges that he was unaware that Plaintiff's appeal had been granted, so that there are no genuine issues of any material facts showing his involvement in violating Plaintiff's constitutional rights to be freed from solitary confinement and have his good time restored. To support his claim, Defendant Franco attaches his affidavit, those of four employees of the Department of Corrections, and one from an employee of the Attorney General's Office.

The affidavits of the two Corrections hearing officers state they were themselves unaware of Plaintiff's successful appeal of the hearing officer's decision, and so did not discuss the matter with Defendant Franco. Mr. Phillips, the appeals officer, is unable to say what he did with the decision reversing Plaintiff's discipline, but apparently thinks he did not inform Defendant Franco. Ms. Catanach, essentially the records custodian for the Corrections Department, says nothing about whether she possessed a copy of the decision before it was sent to her by Plaintiff's Public Defender, or whether an earlier copy might have been sent to Defendant Franco

by her department. One plausible inference to be drawn from these four affidavits is that the decision reversing Plaintiff's discipline stopped with Mr. Phillips, who is believed to be a subordinate of Defendant Franco. Although Mr. Phillips describes his usual course of conduct when receiving a decision on appeal, he does not state that his practices were those instituted or maintained by Defendant Franco, nor whether he followed or failed to follow practices established by Defendant Franco. What the affidavits do not address, and what goes to the heart of the matter concerning Defendant Franco's liability under § 1983, is what policies and procedures were in place, or not, for which Defendant Franco was responsible which could have caused violations of Plaintiff's constitutional rights. Just because the five deponents state they never talked directly with Defendant Franco about the appeal decision does not mean he cannot be held liable under § 1983 as a supervisor of the Corrections Department employees who followed, or failed to follow, PNM policies and procedures for which he was responsible and which caused the violation Plaintiff's constitutional rights.

Specifically, the affidavits fail to establish what policies and procedures were in place at the time Plaintiff's successful appeal was not acted on, or their terms, such as who was responsible for informing all relevant personnel and ensuring that inmates' rights were protected. The affidavits are silent concerning who "promulgated, created, or implemented" any such policies in existence, including the role of Defendant Franco in implementing them. The affidavits fail to state whether or to what extent Defendant Franco exercised control or direction over his subordinates, whoever they were in the chain of command, in carrying out any such policies or procedures. The affidavits do not address to what extent PNM policies and procedures required Defendant Franco to supervise his subordinates in carrying out any such policies or procedures, and whether he failed to do so. The affidavits do not address whether the

existing policies caused the complained of constitutional violations. Whether Defendant Franco acted with deliberate indifference that a constitutional violation would occur as a result of the existing policies, or lack of existing policies, is not addressed. The affidavits do not shed light on whether there have been similar violations of inmates' rights, other than the nine in this case, where successful appeals were not acted on, about which Defendant Franco was, must have been, or should have been aware.

Although Defendant Franco's affidavits focus only on what he says he did not know about Plaintiff's successful appeal and subsequent petition for a writ of habeas corpus, in fact eight other inmates filed petitions on or between October 29, 2013, and March 12, 2014, with five being filed before Plaintiff filed his on December 6, 2013. *See, Plaintiff's Ex. 4-A through 4-I.* These inmates are believed also to have been disciplined for the attack on an inmate on May 27, 2013, similarly to Plaintiff. If Defendant Franco was likewise unaware of whether these eight inmates had successfully appealed his decisions to uphold their disciplines, and was likewise unaware that they had petitioned for writs of habeas corpus, then there is a significant likelihood of a systemic problem in the policies and procedures of the Corrections Department to ensure that inmates' rights were being protected. If any fact weighs in favor of deliberate indifference, it is that Plaintiff Saiz was not alone in suffering a deprivation. Rather, he was one of nine, all of whom were found guilty of a major disciplinary offense and were sent to disciplinary segregation level VI (solitary confinement); appealed and received reversals; and named Defendant Franco in their filed habeas petitions as the respondent responsible for the illegal circumstances of their confinement. That there could be policies, practices or procedures in place within the Corrections Department which would insulate Defendant Franco, the warden, from information about successful appeals and writs of habeas corpus filed against him,

individually, is a huge problem and smacks of deliberate indifference. Plaintiff is entitled to know Defendant Franco's role in any such systemic problem. The possibility that Defendant Franco did not know about nine inmates applying for habeas corpus seems highly unlikely. If he was informed and did nothing to investigate why all the inmates were petitioning for habeas review as a result of the same occurrence, Plaintiff's ability increases to show Defendant Franco's deliberate indifference to their constitutional rights being violated. In either instance, the fact that nine inmates applied for habeas review, and that court records show that eight, including Plaintiff, stipulated to dismissals, presumably because their disciplines were reversed like Plaintiff's, shows that Defendant Franco has failed to demonstrate that no material facts are in dispute concerning his role in Plaintiff's case. Rather, material questions of fact abound concerning his supervisory liability under § 1983 which can only be answered through discovery.

**B. In the Alternative, Plaintiff Should Have Additional Time to Fully Discover the Facts Relating to His Claim that Defendant Franco is Personally Liable for the Constitutional Violations Suffered by Plaintiff.**

Defendant Franco brings his motion for summary judgment under qualified immunity, along with a request for a stay of discovery, before any discovery has taken place in this case. As a result, Plaintiff has had no opportunity to depose Defendant Franco or any of the Corrections Department witnesses whose affidavits are attached to his motion. Their testimony is crucial to establish what policies and procedures were in place in August, 2013, and thereafter, as well as Defendant Franco's role in implementing the policies and procedures and supervising subordinates in carrying out the policies. Defendant Franco should not be allowed to rely on self-serving affidavits to support his motion, while at the same time preventing Plaintiff from conducting discovery of these and other witnesses. Rather, his motion should be stayed or denied to allow Plaintiff an opportunity to develop material facts which would preclude

summary judgment.

As stated above, Plaintiff has shown that as the case now stands, there are likely issues of material fact which warrant denial of Defendant Franco's motion for summary judgment. In the alternative, the Court should defer ruling on his motion and allow discovery. Federal Rule of Civil Procedure 56(d) is designed to safeguard against a premature granting of summary judgment:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

"A party seeking to defer a ruling on summary judgment under Rule 56[(d)] must file an affidavit that explains why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts." *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1310 (10th Cir. 2006) (citations omitted). A Rule 56(d) affidavit must: (1) identify the "probable facts not available;" (2) explain why those facts "cannot be presented" currently; (3) identify "what steps have been taken to obtain those facts;" and (4) explain "how additional time will enable [the party] to obtain these facts and rebut the motion for summary judgment." *Price ex rel. Price v. W. Resources, Inc.,* 232 F.3d 779, 783 (10th Cir. 2000). A factor favoring relief under Rule 56 is a summary judgment movant's exclusive control of information. *Bliss v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) *(citations omitted).* If the Plaintiff makes a satisfactory showing under Rule 56(d), the court may deny the motion for summary judgment or stay the motion until the Plaintiff has had an opportunity to develop necessary facts in opposition. *See, Committee for the first Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir. 1992) (summary judgment should not be granted

where non-moving party has not had opportunity to discover information essential to his opposition).

As noted above, to show that Defendant Franco has supervisory liability under § 1983, it is crucial for Plaintiff to establish exiting policies and procedures at the Corrections Department at the time of his successful appeal, and the role of Defendant Franco relative to them and to his subordinates in carrying them out.  These facts are not available to Plaintiff because Defendant's motion was filed before any discovery had been done, and Defendant Franco now has requested a stay of discovery.  Plaintiff, therefore, does not have access to precisely those persons who can establish the necessary information.  As set forth in the Affidavit of Rachel E. Higgins, attached hereto as Plaintiff's Ex. 3, before Plaintiff can respond to Defendant Franco's motion for summary judgment, additional discovery is necessary to develop facts supporting Plaintiff's assertion that Defendant Franco has supervisory liability under § 1983.  Given the complete lack of information about what policies and procedures were in place at PNM at the time Plaintiff's disciplinary appeal was granted, and what Warden Franco's involvement was in implementing those policies and procedures and supervising his subordinates in carrying them out, Plaintiff cannot respond to the motion for summary judgment.  Plaintiff needs additional time and the ability to depose the persons who supplied affidavits for Defendant Franco, and other personnel of the Corrections Department who were involved in Plaintiff's appeal and the filing of his writ. This is necessary  in order to determine what the relevant policies and procedures were, whether they were followed, whether failure to follow them resulted in the violation of Plaintiff's constitutional rights, and what Defendant Franco's role was with respect to those procedures and supervision of his subordinates who were to carry them out.  Plaintiff also needs additional time to obtain the inmate records for the other eight inmates whose disciplinary decisions were

reversed along with Plaintiff's, and to depose them. Finally, Plaintiff needs additional time to depose employees of the Corrections Department and the New Mexico Attorney General's Office about the documents sent to the AG's Office by the Corrections Department, including the Disciplinary Appeal dated August 27, 2013. Although Defendant Franco and other Department of Corrections employees deny having seen the document before June 25, 2014, it could only have come from the Corrections Department. Discovering its whereabouts before it was supplied to the AG's Office, and who had custody and who might have received copies is part of the inquiry regarding what policies and procedures were in place to ensure that inmates' rights were protected.

## Conclusion

Defendant Franco's motion for summary judgment should be denied because his affidavits fail to show that there is no genuine issue of material fact. Alternatively, his motion is premature because it seeks to demonstrate that he is entitled to qualified immunity before any discovery has taken place in this case allowing Plaintiff to develop facts which could show that Defendant Franco has supervisory liability under § 1983. For that reason, the Court should deny Plaintiff's motion, or, alternatively, defer ruling on it until discovery has taken place.

Respectfully submitted,

/s/Rachel E. Higgins
Rachel E. Higgins, Esq.
509 Roma NW
Albuquerque, NM 87102
505-247-9339
Rachel@rachelhigginslaw.com

Kari T. Morrissey, Esq.
2501 Rio Grande Blvd., NW  #B
Albuquerque, NM  87104-3233
505-244-0952
ktm@morrisseylewis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was served electronically on all parties entitled to receive notice via the CM/ECF filing system maintained by the Federal District Court, District of New Mexico, on the 19th day of April, 2016.

/s/ Rachel E. Higgins