IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSHUA SAIZ,
        Plaintiff,

v.                                                     No. 15-cv-587 JCH-WPL

GERMAN FRANCO, individually and
in his official capacity;
JOHN DOE CORRECTION OFFICERS 1-4
in their individual capacities;
and STATE OF NEW MEXICO

**MEMORANDUM OPINION AND ORDER**

On February 3, 2016, Defendants German Franco and the State of New Mexico ("Defendants") filed a Motion to Dismiss Count III of the First Amended Complaint on grounds that there is no waiver of sovereign immunity under the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 *et seq.* ("NMTCA"). The Court, having considered the motion, briefs, pleadings, undisputed evidence, relevant law, and otherwise being fully advised, concludes that the motion to dismiss should be granted and Count III dismissed.

**I.    FACTUAL BACKGROUND**

Plaintiff Joshua Saiz is a former resident of the Penitentiary of New Mexico (the "Penitentiary"), and at the time, Defendant Franco was the acting warden of the Penitentiary. First Am. Compl. ¶¶ 3-4, ECF No. 18. On May 27, 2013, Plaintiff was one of ten or more inmates housed in L-Pod, level V, when another inmate was assaulted. *Id.* ¶¶ 10-11. Although Corrections Officer J. Barger did not witness Plaintiff engage in misconduct, Officer Barger charged all inmates in L-pod, including Plaintiff, with identical acts of misconduct because it could not be determined who in L-pod committed the assault. *Id.* ¶¶ 12-14.

Despite the lack of evidence against Plaintiff, on June 13, 2013, the assigned hearing officer found Plaintiff guilty of the disciplinary charges filed and recommended imposing 240 days of disciplinary segregation in a level VI unit, as well as loss of all good time. *Id.* ¶ 15. Plaintiff appealed the decision to Defendant Franco, who upheld the hearing officer's decision in his July 1, 2013 Report of Disciplinary Appeal ("Report"). *Id.* ¶ 16. As a result, Plaintiff was placed in disciplinary segregation, or solitary confinement, level VI, and his good time was forfeited and terminated. *Id.* ¶ 17. He also earned no good time while in solitary confinement. *Id.*

Although corrections officers and other employees told him his appeal would be futile, Plaintiff filed an appeal of Defendant Franco's July 1, 2013 Report to the Secretary of the Department of Corrections. *Id.* ¶ 19. On August 27, 2013, Joni Brown, designee for Jerry Roark, Director of Adult Prisons, dismissed the Report, overturning the hearing officer's decision for procedural errors made and ordering that the imposition of discipline be reversed. *Id.* ¶¶ 20-21. Despite Plaintiff's successful appeal, Defendants failed to notify him that his appeal was successful, failed to take any action to release Plaintiff from solitary confinement, failed to restore his good time, and failed to credit him for good time he should have earned while in solitary confinement. *Id.* ¶¶ 21-23.

On December 6, 2013, Plaintiff filed a Petition for Writ of Habeas Corpus ("Writ") to challenge his solitary confinement, stating that his appeal was never heard from the Department of Corrections. *Id.* ¶ 25. Defendant Franco and/or his designee received a copy of the Writ and "intentionally, willfully, deliberately and out of retaliatory motive, took no action" to notify Plaintiff that his appeal had been heard and reversed or to release Plaintiff from solitary confinement. *Id.* ¶ 26. On July 16, 2014, the state court dismissed Plaintiff's Writ after a stipulation of the New Mexico Attorney General that expressly stated that Plaintiff's good time

was restored and his appeal granted. *See id.* ¶ 28. Plaintiff, however, did not receive the benefit of the reinstatement of his good time because it came too late – he had served months beyond the term of his sentence with good time earned and served those months in solitary confinement. *Id.* ¶ 29. According to his inmate records, Plaintiff was held in solitary confinement based on the disciplinary charges until October 2014, at which time he was placed in general population. *Id.* ¶ 31. As a result of his solitary confinement, Plaintiff suffered from severe depression due to the loss of his young child and his mental and physical health deteriorated significantly, causing him extreme pain, suffering, and emotional distress. *Id.* ¶¶ 32-34.

Defendants knew that the system of tracking and calculating good time for inmates was antiquated and error-prone and that the system for tracking inmate sentences was defective, deficient, and non-operational. *Id.* ¶¶ 36-37. They knew the deficiencies in the system since 2012, yet they continued to utilize this system to track Plaintiff's good time. *Id.* ¶ 38. As a result, Plaintiff served approximately a year in excess of the time he would have had to serve had Defendants implemented Director Roark's August 27, 2013 decision reinstating good time and crediting good time for the period of time Plaintiff served in solitary confinement. *Id.* ¶ 35.

Plaintiff filed suit against Defendant Franco and unnamed John Doe correctional officers for violation of procedural due process (Count I), violation of the Eighth and Fourteenth Amendments (Count II), and First Amendment Retaliation (Count IV). Plaintiff also asserted a claim against all Defendants for negligent maintenance of a building under the NMTCA (Count III), the claim at issue here. In Count III, Plaintiff contends that Defendants had the duty to house Plaintiff in a manner not likely to cause injury; they utilized a system of tracking and handling appeals and tracking and calculating good time for inmates that was known to be antiquated, defective, unreliable, and error-prone; they knew these systems to be antiquated, defective,

unreliable, and error-prone; and the manner in which these systems were utilized rendered negligent the operation and maintenance of the facility, causing Plaintiff damages. *Id.* ¶¶ 60-63.

Defendants filed a motion to dismiss Count III, arguing that the allegations in the First Amended Complaint constitute administrative functions associated with the operation of the corrections system for which immunity under Section 41-4-6 has not been waived. Defs.' Mot. 6-7, ECF No. 19. Defendants argue that *Archibeque v. Moya*, 1993-NMSC-079, 866 P.2d 344, governs this case.

In response, Plaintiff asserts that it incorporates the facts (A-V) in his response to Defendant Franco's Motion for Summary Judgment. Pl.'s Resp. 1, ECF No. 33 (citing Pl.'s Resp. to Mot. for Summ. J., ECF No. 30 ("Pl.'s MSJ Resp.")). The following facts set forth in the Plaintiff's response are undisputed. Eight inmates who were found guilty of the same major conduct offense of assault as Plaintiff were punished with a forfeiture of good time and placed in level VI disciplinary segregation, they appealed the adverse decisions and filed petitions for writ of habeas corpus concerning the reasons for and conditions of their confinement during the same timeframe. *Compare* Pl.'s MSJ Resp. ¶¶ B, J, ECF No. 30, *with* Defs.' Reply in Supp. of Mot. for Summ. J. 7-8, ECF No. 39 ("Defs.' MSJ Reply"). Plaintiff's Writ was joined with the petitions for writ of habeas corpus of the eight other inmates. *Compare* Pl.'s MSJ Resp. ¶¶ K, T, ECF No. 30, *with* Defs.' MSJ Reply 8-9, ECF No. 39. Eight of the petitions were dismissed by way of stipulation on or between July 21, 2014, and August 6, 2014. *Compare* Pl.'s MSJ Resp. ¶ T, ECF No. 30, *with* Defs.' MSJ Reply 9, ECF No. 39. Plaintiff argues that he should be given leave to amend to include these allegations, rather than face dismissal, should the Court deem the allegations necessary. Pl.'s Resp. 9, ECF No. 33.

Plaintiff contends *Archibeque* is limited to a discrete administrative act that affects only a single person, whereas this case involves the alleged negligent operation of the penitentiary that affected a group of inmates. *See* Pl.'s Resp. 2, 5, ECF No. 33. Plaintiff argues that immunity is waived here because the alleged negligence in the operation of the penitentiary created a dangerous condition affecting more than one inmate. *See id.* at 5-8. Plaintiff asserts that the situation here is more akin to the case of *Callaway v. New Mexico Dep't of Corrections*, 1994-NMCA-049, 875 P.2d 393, than to *Archibeque*. Finally, Plaintiff contends that the terms "machinery" and "equipment" include "office systems, including computers and calculation software" as well as any other "systems in place to disseminate information about inmates' grievances and calculate good time and release dates." Pl.'s Resp. 9-10, ECF No. 33.

## II.     ANALYSIS

The NMTCA shields government workers and entities from tort liability unless immunity is specifically waived by the Act. N.M. Stat. Ann. § 41-4-4(A); *Archibeque*, 1993-NMSC-079, ¶ 5. At issue in this case is Section 41-4-6, which provides:

> The immunity granted pursuant to [Section 41-4-4(A)] does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

N.M. Stat. Ann. § 41-4-6(A). Although Section 41-4-6 has been referred to as the "premises liability" statute, *Archibeque*, 1993-NMSC-079, ¶ 5, liability under the section "is not limited to claims caused by injuries occurring on or off certain 'premises,' as the words 'machinery' and 'equipment' reveal." *Cobos v. Dona Ana County Housing Authority*, 1998-NMSC-049, ¶ 9, 970 P.2d 1143 (quoting *Bober v. New Mexico State Fair*, 111 N.M. 644, 653, 808 P.2d 614, 623

(1991)). The Court will examine the primary cases upon which the parties rely that define the contours of the waiver.

In *Archibeque*, a prisoner soon to be released into the prison population met with a prison intake officer to discuss whether he had any known enemies within that population. *Archibeque*, 1993-NMSC-079, ¶ 2. Mr. Archibeque told the officer that Alex Gallegos was an enemy, but the officer, without checking an available document of current inmates, responded that Mr. Gallegos was no longer imprisoned there and released Mr. Archibeque into the general population. *Id.* That night, Mr. Gallegos and other inmates assaulted Mr. Archibeque in the weight room. *Id.* Among other claims, Mr. Archibeque brought suit under Section 41-4-6 for injuries resulting from the negligent operation of the prison facilities. *Id.* ¶ 3.

The New Mexico Supreme Court held that Section 41-4-6 did not waive immunity, because the "'operation' and 'maintenance' of the penitentiary premises, as these terms are used in Section 41-4-6, does not include the security, custody, and classification of inmates." *Id.* ¶ 8. The court explained:

> The purpose of Section 41-4-6 is to ensure the general public's safety by requiring public employees to exercise reasonable care in maintaining and operating the physical premises owned and operated by the government. *Castillo v. County of Santa Fe*, 107 N.M. 204, 206-07, 755 P.2d 48, 50-51 (1988). [The prison intake officer] was not operating and maintaining the prison's physical premises when she negligently classified Archibeque as an inmate that could be released into the general prison population. Rather, she was performing an administrative function associated with the operation of the corrections system. Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions.

*Id.*

The New Mexico Supreme Court distinguished its decision in *Castillo*, in which it had held that the waiver of immunity in Section 41-4-6 applied where a young boy had been bitten by a dog roaming loose on grounds of a housing project owned and operated by the County of

Santa Fe. *See id.* ¶ 10 (citing *Castillo*, 107 N.M. at 205, 755 P.2d at 49). The *Archibeque* court reasoned:

> In *Castillo*, we noted that loose-running dogs presented an unsafe condition upon the land *as to residents and invitees on the premises*. *See* [*Castillo*, 107 N.M.] at 207, 755 P.2d at 51. The roaming dogs in *Castillo* presented an unsafe condition for the public generally, or at least that portion of the public residing in or invited to the housing project. In *Castillo*, waiving immunity under Section 41-4-6 was appropriate in light of the statute's purpose to ensure the safety of *the general public*. No similar situation presents itself in the case at bar. While [the officer's] misclassification of Archibeque put him at risk, the negligence did not create an unsafe condition on the prison premises as to the general prison population. Reading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purposes of the Tort Claims Act, which recognizes that government, acting for the public good, should not have the duty to do everything that might be done, and limits government liability accordingly.

*Id.* ¶ 11 (emphasis in original and internal quotations omitted).

Following *Archibeque*, the New Mexico Court of Appeals in *Callaway* held that Section 41-4-6's waiver of immunity applied where the plaintiff alleged that Department of Corrections officials and prison guards were negligent in letting gang members, known for prior acts of violence against other inmates, loose among new orientees in a recreation room that contained potential weapons and was shielded from corrections officers' direct observation due to blind corners and a stair well. *Callaway*, 1994-NMCA-049, ¶¶ 13, 19. The *Callaway* court concluded that these conditions were more similar to the loose dogs in *Castillo* than the misclassification of an inmate in *Archibeque*, because the violent gang members created a dangerous condition on the premises of the prison as to the general prison population. *See id.* ¶¶ 15-19.

The New Mexico Supreme Court in *Espinoza v. Town of Taos* discussed *Callaway* with approval, but noted that the Court of Appeals "did not rely on negligent supervision in *Callaway* but observed that the security practices in place resulted in unsafe conditions for the entire prison population." *Espinoza*, 1995-NMSC-070, ¶ 13, 905 P.2d 718 (citing *Callaway*, 117 N.M. at 643,

7

875 P.2d at 399). The *Espinoza* court rejected the plaintiff's argument that Section 41-4-6 waived immunity for the alleged failure of Town employees to exercise ordinary care in the supervision of children in their summer day camp program where the inadequate supervision resulted in a child falling from the top of a slide. *See id.* ¶¶ 2-4. The New Mexico Supreme Court explained that the cases in which waiver of liability had been found all "concern negligent conduct that itself created unsafe conditions for the general public," and unlike those cases, in the case at hand, "it was the day-camp undertaking and not the condition of the premises that gave rise to duty." *Id.* ¶ 14.

The New Mexico Supreme Court once again analyzed the contours of Section 41-4-6 in *Upton v. Clovis Municipal Sch. Dist.*, 2006-NMSC-040, 141 P.3d 1259. *Upton* concerned the death of a young asthmatic girl from forced overexertion in a physical education class, despite parental warnings to the school about her condition, and an inadequate emergency and medical response once she collapsed. *See id.* ¶¶ 10-11. Although the court concluded that Section 41-4-6's waiver applied to the negligent failure of school employees to follow appropriate safety protocols that resulted in a dangerous condition at the school, it went to lengths to limit the case's application and to set forth the parameters of the waiver. *See id.* ¶¶ 13-21. It reaffirmed the concept that the NMTCA "does not waive immunity for a single, discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public," *id.* ¶ 17, and held that, for a waiver to occur under Section 41-4-6, "the negligence must be of a kind which makes the premises dangerous, or potentially so, to the affected public, the consumers of the service or the users of the building," *id.* ¶ 23. The *Upton* court decided that the "school's failures, if proven, created a dangerous condition for all special-needs children, and with regard to emergency responsiveness, for every student at the school." *Id.* ¶ 24.

The case before the Court more closely aligns with *Archibeque* and *Espinoza*, than with *Callaway* and *Upton*. As in *Archibeque*, this case involves a discrete negligent administrative act that affected the classification and good time credits of one inmate. Even if the Court permitted Plaintiff to amend his complaint to add allegations concerning how the negligent administrative actions affected the classifications and good time credit of eight additional inmates, Count III would not survive. Although a physical defect in the premises is not required, the negligence must create "an unsafe, dangerous, or defective condition on property," *Callaway*, 1994-NMCA-049, ¶ 17, or "a general condition of unreasonable risk from negligent security practices," *id.* ¶ 18 (quoting *Archibeque*, 116 N.M. at 622, 866 P.2d at 350 (Ransom, C.J., specially concurring). In this case, the alleged negligence did not make the *premises* dangerous or create a dangerous *security* condition affecting the general prison population. *Cf. Lymon v. Aramark Corp.*, 728 F.Supp.2d 1222, 1266-67 (D.N.M. 2010) (holding that negligence claim under Section 41-4-6 based on allegations of misclassification of numerous inmates, including plaintiff, with medical conditions that created danger for inmate population and resulted in injury to plaintiff were not sufficient to rise to level of dangerous condition on prison premises for inmate population sufficient to justify waiver of immunity; allegations amounted to negligently performed administrative task for which immunity was not waived under *Archibeque* and misclassification raised health, not security, risks). The Court will therefore not grant leave to amend the complaint to add the undisputed facts concerning the eight additional inmates because amendment would be futile.

Nor does the Court find persuasive Plaintiff's argument that the tracking failures occurred by means of the negligent use of computers and calculation software, thus falling within the waiver for negligent use of "machinery" or "equipment." Unlike in the cases finding the waiver

to apply for equipment or machinery, the alleged administrative negligence here does not involve the *safety* of that equipment or machinery. *See., e.g., Garner v. Dep't of Corrections*, 1995-NMCA-103, ¶¶ 1, 6, 903 P.2d 858 (concluding that Section 41-4-6 waived immunity for prisoner's claim that prison failed to provide safety glasses and training in use of electric wire brush at prison's paint shop that resulted in injury to his eye when wire broke from brush, because nature of claim involved safety of equipment or machinery used on prison premises). The failure to track appeals and calculate good time credits properly, as alleged here, did not create a dangerous condition on the premises or affect the safety of the computer equipment or software used by the general prison population. To apply the waiver to the facts in this case would ignore the limitation stated by the New Mexico Supreme Court in *Archibeque*, and again in *Espinoza*, that Section 41-4-6's waiver does not extend to the "negligent performance of administrative functions." *Espinoza*, 1995-NMSC-070, ¶ 12 (citing *Archibeque*, 116 N.M. at 619, 866 P.2d at 347). As those cases remain good law, the Court must dismiss Count III.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Count III of First Amended Complaint (**ECF No. 19**) is **GRANTED** and **Count III** is **DISMISSED with prejudice** based on sovereign immunity.

_____
**UNITED STATES DISTRICT COURT**