# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSHUA SAIZ**,

     Plaintiff,

vs.                                             No. 15 CV 587 JAP/JHR

**GERMAN FRANCO**, individually and
in his official capacity,
**JOHN DOE, Corrections Officers 1-4,** in
their individual capacities,
**STATE OF NEW MEXICO,**

     Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Saiz (Plaintiff) alleges that while he was an inmate at the Penitentiary of New Mexico (PNM), he was wrongfully incarcerated for several months in disciplinary segregation (solitary confinement) and lost his good-time credit, which resulted in his confinement for 248 days beyond his release date. *See* PLAINTIFF'S FIRST AMENDED COMPLAINT TO RECOVER DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS AND STATE LAW (Doc. No. 18) (Amended Complaint). (*See* Am. Compl. ¶ 3.) Plaintiff contends that Defendant German Franco (Warden Franco or Franco), Warden of the PNM, failed to notify him and other prison officials that the decision placing Plaintiff in disciplinary segregation was reversed on appeal and that Warden Franco's failure caused Plaintiff's wrongful incarceration beyond his release date. (*Id.* ¶ 58.) Warden Franco moves for summary judgment on Counts I, II,

and IV, the remaining counts of the Amended Complaint, arguing qualified immunity.[1] Plaintiff brought his claims under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights under the Fourteenth Amendment's due process clause (Count I), the Eighth Amendment (Count II), and the First Amendment (Count IV).[2]

I.      STANDARD OF REVIEW

   A.      Summary Judgment

   Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the

---

[1] On March 1, 2016, Franco filed GERMAN FRANCO'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 23) (Original Motion or Orig. Mot.). On April 20, 2016 Plaintiff filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GERMAN FRANCO'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 30) (Orig. Resp.) arguing *inter alia*, that the Court should allow discovery under Fed. R. Civ. P. 56(d). On June 17, 2016, Franco filed REPLY IN SUPPORT OF GERMAN FRANCO'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 39) (Orig. Reply). On March 23, 2017, United States District Judge M. Christina Armijo entered a MEMORANDUM OPINION AND ORDER (Doc. No. 46) deferring decision on the Original Motion to allow limited discovery. During the discovery period, Plaintiff received documents and took the depositions of Warden Franco, Larry Phillips, Cathleen Catanach, and Sean Shannon, the State-Wide Legal Access Monitor for the PNM. After discovery was completed, the parties were ordered to submit simultaneous briefs on October 20, 2017 and responses on November 3, 2017. *See* ORDER AMENDING DEADLINES FOR FILING JOINT BRIEFS (Doc. No. 51). On October 20, 2017, Franco filed a SUPPLEMENTAL BRIEF IN SUPPORT OF GERMAN FRANCO'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 56) (Suppl. Mot.), and Plaintiff filed PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT GERMAN FRANCO'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 55) (Suppl. Resp.) On November 3, 2017, Franco filed REPLY TO PLAINTIFF'S SUPPLEMENTAL RESPONSE (Doc. No. 58) (Supp. Reply), and Plaintiff filed PLAINTIFF'S RESPONSE TO DEFENDANT GERMAN FRANDO'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 57) (Supp. Brief).

[2] Count III of the Amended Complaint has been dismissed. *See* MEMORANDUM OPINION AND ORDER (Doc. No. 44).

movant meets this burden, Rule 56 requires the opposing party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, the Court must "determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc*., 293 F.3d 1187, 1195 (10th Cir. 2002).

B.     Qualified Immunity

When an individual defendant asserts qualified immunity from a claim brought under 42 U.S.C. § 1983, the court analyzes the defendant's motion for summary judgment differently. "The doctrine of qualified immunity protects public or government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted). The plaintiff must establish 1) that the defendant violated a constitutional and 2) that the right was clearly established at the time of the defendant's conduct. *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Hesse v. Town of Jackson, Wyo.,* 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted). But, if the plaintiff succeeds in carrying his two-part burden, the burden shifts to the defendant to show there are no remaining material issues of fact that would defeat qualified immunity. *Estate of Booker v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014).

## II.    BACKGROUND

### A.    Disciplinary Decision and Internal Appeal.

On May 27, 2013, Plaintiff was an inmate at the PNM housed in the L-Pod, Level V. (Am. Compl. ¶ 10.) On that date, Corrections Officer J. Barger (CO Barger) accused Plaintiff and all of the other inmates in the L-Pod of brutally assaulting another inmate. (*Id.* ¶ 11.) On June 13, 2013, an evidentiary hearing was held before Hearing Officer Andrew Wagner (Wagner). (Orig. Mot. UMF 6.) Hearing Officer Wagner found Plaintiff guilty of three misconduct charges and recommended the forfeiture of Plaintiff's good-time credits and reassignment to a disciplinary segregation unit for 240 days. (*Id.* ¶ 15; Orig. Mot. UMF 6.) On June 17, 2013, Franco, then the Acting Warden of the PNM,[3] approved Hearing Officer Wagner's recommendation. (Supp. Resp. UMF W.) Plaintiff appealed that decision. On July 1, 2013, Franco, as Warden of the PNM, issued a Report of Disciplinary Appeal upholding the disciplinary decision. (Am. Compl. ¶ 16; Supp. Resp. UMF X.) Plaintiff's credit for five months and seventeen days of good-time was forfeited, he was moved to the disciplinary segregation unit, and he was denied additional good-time credit while he was in disciplinary segregation. (Am. Compl. ¶ 17.)[4]

---

[3] In May 2013, Franco was the Acting Warden of the PNM. (Supp. Resp. UMF W.). On July 1, 2013, Franco was named Warden of the PNM. (Supp. UMF X.)

[4] Franco testified,

> Q. Do you have any sense of what your individual participation was in [Plaintiff's] appeal process as you sit here?
> A. My participation in the appeal process, the initial appeal process is to review the case, you know, and then make a decision on the facts that are presented before me. In regard to the appeal process that is taken to Central Office, I have no involvement.
> Q. All right. Are you aware that you reviewed and approved the Hearing Officer's initial determination in [Plaintiff's] case?
> A. Yes.
> Q. And you did that in the capacity as an acting warden; is that right?
> A. Yes.
> Q. And are you aware that subsequent to that, [Plaintiff] appealed and that you upheld the Hearing Officer's decision.

B.      Appeal to the Secretary of the NMCD.

Plaintiff appealed Warden Franco's Report of Disciplinary Appeal to the Secretary of the New Mexico Corrections Department (NMCD). (*Id.* ¶ 19.) In 2013, Larry Phillips, the Statewide Grievance-Appeals Coordinator for the NMCD, handled discretionary appeals for all eleven of New Mexico's adult prisons. (Orig. Mot. UMF 13; Supp. Resp. Ex. 2, Phillips Dep. 6:17-19.) Mr. Phillips reviewed the written record associated with each appeal and made recommendations to the Secretary's designee. (*Id.* 9:3-7.) On August 20, 2013, Mr. Phillips received Plaintiff's appeal and docketed it as Disciplinary Appeal S-13-05-36A. (*Id.* UMF 14.) After reviewing the disciplinary report and all exhibits, Mr. Phillips drafted a written recommendation to grant the appeal for procedural error.[5] (*Id.*; Orig. Mot. Ex. E-2.) Mr. Phillips submitted his

---

A. Correct.
Q. So that would be two dates upon which you acted in reference to [Plaintiff's] appeal; would you agree?
A. Yes.

(Supp. Resp. Ex. 1, Franco Dep. 16:16-17:11.)
[5] Mr. Phillips testified,

> Q. In [Plaintiff's] case specifically, you ruled in favor of [Plaintiff] based on procedural errors made by the hearing officer, right?
> . . .
> A. That is correct, due to the fact that based upon due process and that deputy warden—he was at that time Deputy Warden Franco. He had signed the decision, and he also had signed the appeal, which was a procedural error that, being warden at that time, he could not sign off that sanction due to the fact that it made him biased once that report came up to him.
> And what I did is when I saw that, I didn't feel that it was necessary to go further into the facts because his rights were violated, plain and simple. I ruled in favor of [Plaintiff] ….
> Q. All right. And the procedural error in relationship to [Plaintiff] … was that Deputy Warden German Franco improperly presided over two steps in the appeal process?
> A.  Yes, ma'am.
> ...
> Once I saw that issue, I went and I discussed it with my—I believe it was Anthony Romero. And I told Deputy Director Romero, "I'm going to have to dismiss this based upon this, this and this" and he concurred with me. I then typed it all up. I believe Joni Brown signed off on the initial one….
> Q. Right. Instead what happened is the same person presided over the appeal twice—
> A. Yes, ma'am.
> …
> Q.  And tell me your supervisor's name again.
> A. That was—I had three supervisors. I had Deputy Director Romero, Deputy Director Brown, and Director Roark.

(Supp. Resp. Ex. 2, Phillips Dep. 18:18–21:11.)

recommendation to Ms. Joni Brown, the designee for Jerry Roark, the Director of Adult Prisons. (*Id.*; Supp. Resp. Ex. 2 Phillips Dep. 30:3-11.) The appeal decision was addressed to Plaintiff and stated "it is my decision to grant this appeal and dismiss your report. Your issue is considered resolved and the disciplinary officer/records coordinator at PNM will be instructed to clear the report out of your file and update the good-time along with readjusting your PRD date [projected release date]." (Orig. Mot. Ex. E-2.) On August 27, 2013, Ms. Brown signed Mr. Phillip's appeal decision and gave it back to Mr. Phillips for "further handling." (*Id.*; Orig. Mot. Exs. D, D-1, D-2; E-2.)

Mr. Phillips testified that after receiving approval of Plaintiff's appeal decision from Ms. Brown, his practice at that time "would have been to send a copy of the decision to one of the Hearing Officers at the penitentiary, and keep the original document in my file, which I currently have. I would have transmitted the copy of the decision through our intra-agency mail." (Orig. Mot. Ex. D, Phillips Aff. ¶ 9; Supp. Resp. Ex. 2, Phillips Dep. 32:1-8.) Neither of the hearing officers at the PNM received Plaintiff's appeal decision. (*Id.*; Orig. Mot. Ex. E, Wagner Aff. ¶ 5; Orig. Mot. Ex. F, Boyer Aff. ¶¶ 4–5.) Mr. Phillips did not make contemporaneous notes regarding transmittals of appeal decisions, and Mr. Phillips did not maintain a tracking system for the appeal decisions he sent out. (Phillips Aff. ¶ 9.) Mr. Phillips testified that he had no "independent recollection" of sending out this particular appeal decision. (*Id.*) Mr. Phillips relied on the recipients at each penitentiary to implement the decisions he sent them. (*Id.*)[6] Mr. Phillips did not typically send copies of appeal decisions to wardens or to the individual inmates, and Mr.

---

[6] Mr. Phillips testified:

> Q. All right. And the people to whom you would have sent a copy of this decision are who?
> A. The hearing officer, plain and simple.… It would not go to Warden Franco, it would not go to the records coordinator, it would not go to classification. It would go strictly to the hearing officer to start the process at the facility.

(Supp. Mot. Ex. K, Phillips Dep. 48:6-12.)

Phillips never discussed any aspect of Plaintiff's appeal with Warden Franco or personnel at the PNM. (*Id.* ¶ 10.) Mr. Phillips, to the best of his recollection, "had no further dealings with this matter until after the lawsuit was filed by [Plaintiff] … in late 2015." (*Id.* ¶ 11.)

Until this lawsuit was filed in 2015, Warden Franco was not informed that Plaintiff had appealed the disciplinary decision or that Plaintiff's appeal was granted by the Secretary of NMCD. (Supp. Resp. UMF Z, UMF AA; Ex. 1 Franco Dep. 19:20-20:11; 51:8-15.)

NMCD Policy CD-090101 governs inmate appeals of disciplinary actions. (Supp. Resp. Ex. 3.) NMCD Policy CD-090101 was promulgated and signed by the Cabinet Secretary of the Corrections Department. (Orig. Reply Ex. G ¶ 5.) Policy CD-090101 states in relevant part:

> There is no absolute right of appeal to the Secretary. However, the Secretary or designee shall have final authority in reviewing the Warden's summary, findings and conclusions. The Secretary may order any appropriate remedy.… After the Secretary has rendered a final decision on the appeal, the Warden shall notify the appellant in writing of the Secretary's decision within five working days after the decision and shall forward the inmate a copy of the written summary, the findings of fact and conclusions. That disposition is final.

(Supp. Resp. UMF LL; Ex. 3, Policy CD-090101 § K.) Although this policy assumes that the Warden is notified of all NMCD appeal decisions, the policy did not specify how the Warden was to be informed about each appeal decision. (Supp. Resp. UMF NN.) Mr. Phillips testified that he had "free latitude" to devise his own procedure for informing prison personnel of appeal decisions. (*Id.* UMF PP; Ex. 2, Phillips Dep. 32:1–8.)

Warden Franco had the authority to review and make suggested revisions to NMCD policies. (Supp. Resp. UMF DD; Ex. 1, Franco Dep. 10:15–11:19.) When asked whether he knew which employees were responsible for disseminating information related to inmate appeals, Franco testified, "Not necessarily." (Supp. Resp. Ex. 1, Franco Dep. 22:7-12.) He stated, "there are policies that are set in place, there are procedures there are protocols that staff follow

in regard to when appeals are done, how they are supposed to be handled, who they are supposed to be handled by. It doesn't necessarily mean that paperwork couldn't have gotten lost or something, miscommunicated from one individual to another." (*Id.* 25:18–25.)

Warden Franco testified that Mr. Phillips "was not a subordinate employee …, and I did not supervise him. Instead, Mr. Phillips in his capacity as Grievance-Appeals Coordinator answered to the NMCD Division Director of Adult Prisons and the Deputy Director of Adult Prisons, who in turn answered to the Cabinet Secretary of the New Mexico Corrections Department, as do I as Warden." (Orig. Reply Ex. G, Franco Second Aff. ¶ 3.) Warden Franco testified that Mr. Phillips worked in the NMCD Administration Building "which is physically separate from, and not physically attached to or a part of, the penitentiary facilities of which I am the warden." (*Id.*) Warden Franco attached an NMCD organizational chart to his second affidavit. (Orig. Reply Ex. G-1.) Although Warden Franco and Mr. Phillips are part of the NMCD, the organizational chart shows that the NMCD is made up of five departments. One of the five departments is the Correctional Operations department. (*Id.*) One of the divisions under Correctional Operations is the Adult Prison Division. (*Id.*) The chart setting forth the structure of the Adult Prison Division shows that the Grievance Coordinator is under the Deputy Director Adult Prisons Administration. (*Id.*) However, Public Wardens are classified under the Deputy Director Adult Prison Operations. (*Id.*) The chart supports Warden Franco's testimony that Larry Phillips was not Warden Franco's subordinate.[7]

C.      Petition for Writ of Habeas Corpus

On December 6, 2013, Plaintiff, pro se, filed a Petition for Writ of Habeas Corpus (Habeas Petition) in the First Judicial District Court, Santa Fe County, New Mexico naming

---

[7] Notably, if Warden Franco was Mr. Phillips' supervisor, a question would be raised as to whether Mr. Phillips could appropriately and independently review appeals from Warden Franco's decisions.

Warden Franco as respondent. *Saiz v. Franco*, No. D-101-CV-2013-03100 (Orig. Mot. Ex. C-1.)
The Habeas Petition was filled out by hand on a form provided for pro se parties. (*Id.*) In the
Habeas Petition, Plaintiff alleged that the discipline imposed on him was excessive, was not
based on a preponderance of the evidence, and was not in accordance with the disciplinary
policies of the PNM. (*Id.*) Plaintiff asked for the restoration of his good-time credits. (*Id.*)
Importantly, Plaintiff stated that he appealed the disciplinary decision to Warden Franco, which
was denied, and that he then appealed to the Secretary of the NMCD, who "never responded."
(*Id.*) The petition form that Plaintiff used contained instructions to filers that they must complete
the Certificate of Service and mail or otherwise serve copies of the petition on the respondent
and on the district attorney in the county in which the petition is filed. (*Id.*) The Certificate of
Service on Plaintiff's Habeas Petition was left blank. (*Id.*)

Each year, for many years, numerous habeas petitions have been filed against Warden
Franco, as respondent. (Supp. Mot. Ex. I, Franco Dep. 18:10–16; Ex. 2, Shannon Dep. 78:9–22.)
Warden Franco did not personally review those petitions. (Supp. Resp. Ex. 1, Franco Dep. 18:3–
9.) After receiving each petition, usually by mail, Warden Franco required his administrative
assistant to copy and file each petition. (*Id.*) Warden Franco's administrative assistant then sent
copies of all habeas petitions to the Legal Department of the NMCD. (*Id.* 17:24-18:9.) Warden
Franco did not have  his assistant maintain a list of the petitions filed against him for monitoring.
(*Id.* 19:10-14.) In short, Warden Franco did not know about Plaintiff's Habeas Petition until this
case was filed. (Orig. Mot. Ex. A, Franco Aff. ¶ 7; Supp. Resp. Ex. 1, Franco Dep. 19-1-5.)

On February 14, 2014 and on June 6, 2014, the Santa Fe County District Court entered an
ORDER OF JOINDER combining Plaintiff's Habeas Petition with petitions from several other

prisoners who were accused of the same assault. (Orig. Mot. Exs. C-2; C-3.)[8] On March 3, 2014,

the Santa Fe County District Court appointed Public Defender Amanda Stephenson to represent

Plaintiff. (Orig. Mot. Ex. C-4.) On March 17, 2014, the District Court ordered Ms. Stephenson to

file an amended petition. (*Id.* Ex. C-5.) On May 29, 2014, Ms. Stephenson received Plaintiff's

"good-time figuring sheet" or GTFS, and noticed that it did not "reflect the instructions outlined

in the appeal" decision because Plaintiff's good-time credits had never been restored. (Orig. Mot.

Ex. B-2 Stephenson email chain.)

      As described in the next section, Ms. Stephenson contacted the NMCD in late June 2014

about the failure to restore Plaintiff's good-time credits, which the NMCD corrected. On July 14,

2014, before the deadline for filing an amended petition, Ms. Stephenson filed a notice of

withdrawal of Plaintiff's Habeas Petition stating that Plaintiff's "good time credits ha[d] been

fully restored and his disciplinary appeal ha[d] been granted." (Orig. Mot. UMF 32; Orig. Mot.

Ex. C, Claire Welch Aff. ¶ 10; Orig. Mot. Ex. C-7.)

      D.      Officials Notified of August 27, 2013 Appeal Decision.

      Cathleen Catanach (Catanach) was the Bureau Chief of the NMCD's Offender

Management Bureau. She handled inmate records for the approximately 6,700 inmates in

NMCD's eleven adult prisons, including records related to intake, release, parole and good-time

credits. (Orig. Mot. Ex. B, Catanach Aff. ¶¶ 1-2.) On June 25, 2014, Ms. Catanach received an

email from Ms. Stephenson stating that after reviewing the appeal decision in Case No. S-13-05-

36, she noticed that Plaintiff's good-time credits had not been restored and that Plaintiff never

received the appeal decision. (Orig. Mot. Ex. B ¶ 6; Ex. B-2.) Ms. Stephenson attached a copy of

---

[8] All of the inmates in the L-Pod were found guilty of the same assault. (Orig. Resp. UMFs J and K.) Several of the
inmates filed petitions for writs of habeas corpus. (*Id.*; Ex. 4-A – 4-I.) All of the petitions were dismissed by
stipulations filed between July 21, 2014 and August 6, 2014. (*Id.* UMF T.)

the August 27, 2013 appeal decision to the email and asked Ms. Catanach to correct Plaintiff's records. (*Id.*)

Within minutes of receiving the email, Ms. Catanach forwarded it to one of her staff members, Claudia Rodriquez, with instructions to review the document and make the necessary adjustments to Plaintiff's good time credits, and, after Plaintiff's records had been corrected, to provide Ms. Catanach with a copy of the revised GTFS. (Orig. Mot. Ex. B-2.) Ms. Rodriquez carried out Ms. Catanach's instructions on the same day. (*Id.* Ex. B-3.)

Hearing Officer Wagner testified that he learned of Plaintiff's appeal on June 25, 2014 when he was informed via email from Ms. Rodriquez with the appeal decision attached. (Orig. Mot. Ex. E, Wagner Aff. ¶ 5.) A copy of the email was also sent to Scott Calhoun, an NMCD employee. (*Id.* Ex. E-1.) Ms. Rodriquez asked Hearing Officer Wagner to correct Plaintiff's records at the PNM, and she asked Mr. Calhoun to award Plaintiff the forfeited good-time credits and to add the good-time credits that Plaintiff would have accrued while housed in disciplinary segregation. (*Id.* Ex. E.) Hearing Officer Wagner took the appropriate documents to the PNM records personnel and confirmed that Mr. Calhoun had corrected Plaintiff's record of good-time credits. (*Id.*)

On June 25, 2014, Plaintiff was credited with a total of 423 days of good-time credit. (Orig. Mot. Ex. B, Catanach Aff. ¶ 10.) As a result, Plaintiff's release eligibility date was also adjusted, and he "was started on a parole plan to enable him to appear before the Parole Board to be released from custody and thereafter serve his court-ordered period of parole." (*Id.* ¶ 11.) At the same time, "NMCD staff also initiated the process to reclassify [Plaintiff] from Level VI custody at the PNM north facility, to general population in a Level IV facility (Southern New Mexico Correctional Facility), which, by policy, requires action by the Classifications

Committee." (*Id.* ¶ 12.) The Classification Committee's report stated that it was "advised that Inmate Joshua Saiz #75078 has been granted his appeal of Level VI Status and is to be released from Level VI to General Population per DDAP Anthony Romero." (Orig. Mot. Ex. B-6.) Plaintiff was transferred to the Level IV prison (Southern New Mexico Correctional Facility) from which he was released to parole. (Orig. Mot. Ex. B, Catanach Aff. ¶ 12.)

     E.     Plaintiff's Claims.

In Count I, Plaintiff claims that Warden Franco violated his right to procedural due process under the Fourteenth Amendment of the Constitution of the United States because Warden Franco failed to timely implement the August 27, 2013 appeal decision restoring Plaintiff's good-time credits. (Am. Compl. ¶¶ 39–42.) In Count II, Plaintiff contends that Warden Franco deprived Plaintiff of the right to be free from cruel and unusual punishment under the Eighth Amendment by confining Plaintiff in disciplinary segregation several months beyond his release date. (*Id.* ¶¶ 43–58.) In Count IV, Plaintiff asserts that his rights under the First Amendment were violated when prison personnel retaliated against him for appealing the disciplinary decision. (*Id.* ¶¶ 64–72.)

III.    DISCUSSION

     A.     Plaintiff's Count I claim for violation of procedural due process.

Plaintiff must show that Warden Franco violated a clearly established constitutional right either individually or as a supervisor of prison personnel. An incarcerated inmate has "a liberty interest in being released at the end of his term of imprisonment." *Shorts v. Bartholomew*, 255 F. App'x 46, 51 (6th Cir. 2007) (unpublished) (citations omitted) (stating that the liberty interest is most often attributed to the Due Process Clause of the Fourteenth Amendment). Thus, detention of a prisoner beyond the expiration of his sentence constitutes a deprivation of due process.

*Hainey v. Sirmons*, No. Civ. 07-205-C, 2007 WL 2703166, * 6, * 10 (W.D. Okla. Sept. 14, 2007)

(finding violation of constitutional right when plaintiff kept in prison for seven months past his

proper discharge date and denying defendants qualified immunity).

      1.      Warden Franco had no direct participation in the violation of Plaintiff's
              due process rights.

To hold Warden Franco directly liable, Plaintiff must show that Warden Franco was

personally involved in causing Plaintiff to be held beyond the date he should have been released.

That liability can be based on Warden Franco's direct action against Plaintiff or the maintenance

of an internal policy that caused Plaintiff to be incarcerated longer than required. *Wilson v.

Montano*, 715 F.3d 847, 854 (10th Cir. 2013) ("Individual liability under § 1983 must be based

on personal involvement in the alleged constitutional violation."). In *Wilson*, the plaintiff alleged

that the warden of the Valencia County Detention Center (VCDC) created and maintained a

policy or custom of holding arrestees without pending criminal charges until a local court entered

orders of release *sua sponte*. 715 F.3d at 857. The district court found that the warden's policy

was the "moving force behind Plaintiff's illegal detention[.]" *Id.* The evidence also showed that

the warden trained VCDC employees to detain individuals for days without taking those

individuals before a magistrate judge. *Id.* The Tenth Circuit agreed that the plaintiff had

sufficiently alleged that the warden promulgated policies that caused the constitutional harm and

that the warden acted "with deliberate indifference to routine constitutional violations occurring

at the VCDC." *Id.* at 858.

Warden Franco argues that there is no evidence that he personally caused Plaintiff to be

incarcerated beyond his release date because he was not informed about either Plaintiff's

successful appeal or Plaintiff's Habeas Petition. Plaintiff recognizes that Warden Franco had no

direct knowledge but maintains that according to NMCD policy Warden Franco was responsible

to make sure he and the appropriate prison personnel were informed that his appeal was successful. Plaintiff criticizes Warden Franco's lack of an efficient tracking system for obtaining and disseminating information about appeal decisions. (Supp. Resp. at 7–8.) Tellingly, Warden Franco testified that he was unaware of the written policy CD-090101 that "required him to inform Plaintiff in writing within five working days about the outcome of the appeal." (*Id.*) Plaintiff argues that Warden Franco caused the constitutional injury because he maintained a procedure that was "inherently deficient and prone to the exact occurrence in Plaintiff's case, that is, the hearing officer not receiving the mail for some unknown reason, and no one being informed." (*Id.*) Plaintiff also contends that Warden Franco improperly delegated review of Habeas Petitions to his assistant and that if Warden Franco had reviewed Plaintiff's Habeas Petition, it would have triggered a review of Plaintiff's disciplinary status. In sum, Plaintiff asserts that if Warden Franco had properly kept track of Plaintiff's disciplinary appeal and had properly reviewed Plaintiff's Habeas Petition, then Plaintiff would not have been held 248 days beyond his release date.

Warden Franco first contends that even if he technically violated the policy that required him to inform Plaintiff about the appeal decision within five days of issuance, a mere violation of a policy is insufficient to succeed on a § 1983 claim. *See Davis v. Sherer*, 468 U.S. 183, 194–96 (state official does not lose qualified immunity by violating a state administrative regulation); *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005) ("This Court has consistently held that violation of police regulations is insufficient to ground a § 1983 action for excessive force."); *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (violation of a police regulation requiring verbal warning prior to deadly force was insufficient for liability under § 1983), *abrogated on other grounds Saucier v. Katz,* 533 U.S. 194 (2001). Alternatively, Warden Franco contends that

he did not intentionally violate the policy[9] because on its face, Policy CD-090101 assumes that the warden has received the Secretary's decision before the warden's duty to inform the inmate arises.

The evidence shows that either Mr. Phillips failed to mail the appeal decision to Hearing Officer Wagner or the appeal decision got lost in transit. There is no evidence Warden Franco created the system under which the administration of an appeal decision relied on one piece of paper reaching one person. In other words, Warden Franco cannot be held responsible for Mr. Phillips' or the mail system's failures. Instead, the evidence shows that Mr. Phillips was given the freedom to decide how to disseminate appeals decisions to New Mexico prison officials. In addition, there is no evidence that Mr. Phillips' system for informing prison officials of appeal decisions was inherently deficient.[10] However, the evidence does show that in this case the system failed due to human error. In sum, Plaintiff has not shown that Warden Franco operated under a system that he knew would fail to properly inform him about appeals that he was responsible to implement.

---

[9] Warden Franco testified:

> Q. To your knowledge, have you ever disobeyed a directive from the Director of Adult Prisons or the Secretary of Corrections ordering you, as warden or deputy warden, to do something?
> A. No. I have nothing to gain by keeping somebody.

(Supp. Resp. Ex. 1, Franco Dep. 52:20–25.)

[10] Warden Franco testified at his deposition about Mr. Phillips' reliance on intra-office mail to send out appeal decisions:

> Q.... Again, I want to ask you whether you believe—given the resources available within the operations of the State of New Mexico, do you think it was reasonable, a reason[able] construction of policy and procedure, for the success of this appeal to stand and fall on one piece of paper?
> . . .
> A. I would say that based on the history and based on the fact that this is the first time that I have heard of a case in which something was not done, or given back to an inmate, and based on the fact that that policy has been in place for, I don't know, 20, 30 years, I would say that it is successful. I just say—I would say that yeah, we had one issue, but in the past, it has been successful.

(Supp. Mot. Ex. I, Franco Dep. 29:17–30:6.)

Warden Franco was also responsible for the handling of habeas petitions served on him at his office. However, there is no evidence that requiring his assistant to send those petitions to the NMCD Legal Department was inherently deficient. *See Lupo v. Voinovich*, 235 F. Supp. 2d 782, 797 (S.D. Ohio 2002) (holding that supervisor could not be held individually liable under § 1983 for actions of his employees simply because supervisor delegated to those employees certain responsibilities). Plaintiff has not demonstrated that his Habeas Petition was mishandled either by Warden Franco's assistant or by the NMCD Legal Department. As a result, Plaintiff has failed to show that Warden Franco caused the constitutional injury in his handling of Plaintiff's Habeas Petition.

In sum, human errors, even negligent errors, are not sufficient to allow relief under § 1983. *Daniels v. Williams*, 474 U.S. 327, 335–36 (1986) (holding that negligence by a jail custodian is insufficient to support liability under § 1983 for violation of the Fourteenth Amendment's due process clause). *See also West v. Tillman*, 496 F.3d 1321, 1333 (11th Cir. 2007) (affirming summary judgment for sheriff and other jail employees where inmates were detained past their release date, but failure to release was the result of human error, not deliberate indifference.). Here, the evidence of record does not indicate that Warden Franco or Warden Franco's policies caused Plaintiff's constitutional injury. Instead, it appears that a bureaucratic failure to inform Hearing Officer Wagner of the appeal decision caused Plaintiff's injury. In *West,* the Eleventh Circuit stated:

> That Plaintiffs were not released in a timely fashion from the Jail is bad. Mistakes were made. But no one is entitled to an error-free bureaucracy; and deliberate indifference-the federal constitutional standard-is a high standard. As a matter of law, the record does not show that Defendants were deliberately indifferent to Plaintiffs' right to be released as ordered; instead, the evidence indicates that the errors that led to Plaintiffs' over-detentions were caused by-at worst-the Nonsupervisory Defendants' unfortunate lapses[.]

*Id.*

      2.     Plaintiff has failed to show deliberate indifference.

As illustrated in the quote from the *West* decision, in addition to causation, Plaintiff "must demonstrate that a [governmental action] … reflects deliberate indifference to the risk that a person's constitutional or statutory rights will be violated." *Shorts*, 255 F. App'x at 53. Deliberate indifference is a stringent standard of fault, requiring proof that an official "disregarded a known or obvious consequence of his action [or inaction]." *Id.* For example, deliberate indifference has been demonstrated in cases "where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation." *Id.* (quoting *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)). In *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), the Ninth Circuit considered a § 1983 claim by a prisoner who had been improperly held five years beyond the completion of his sentence due to an incorrect calculation of his release date. *Id.* at 1354. The Ninth Circuit Court of Appeals, sitting *en banc*, concluded there was credible evidence that the defendants had been put on notice of the computational error but had refused to investigate the error. *Id.* at 1354–55. As a result, the Ninth Circuit agreed that the evidence sufficiently supported a finding of deliberate indifference and, therefore, defeated the defendants' claim of qualified immunity. *Id.* at 1355.

Plaintiff does not dispute that Warden Franco had no knowledge of the appeal decision. However, Plaintiff contends that Warden Franco exhibited deliberate indifference by failing to establish a workable procedure to learn about successful appeals from the NMCD's Grievance Coordinator, Mr. Phillips. In addition, Plaintiff contends that Warden Franco was deliberately indifferent to his responsibility to tell an inmate about a successful appeal within five days of its issuance as required under NMCD Policy CD 090101. Plaintiff further contends that Warden

Franco could have determined that a mistake had been made in transmitting the appeal decision if he had reviewed Plaintiff's Habeas Petition. Instead, Warden Franco merely had his assistant make a copy of Plaintiff's Habeas Petition and forward it to the NMCD Legal Department. Plaintiff asserts that if Warden Franco had made sure he kept up with the status of the appeal decision through tracking or by reviewing the Habeas Petition, that knowledge would have "triggered an immediate review of [Plaintiff's] loss of good time and placement in disciplinary segregation." (Supp. Resp. at 8.)

Although Warden Franco had the authority to set policy for handling habeas petitions in his office, his office procedure did not reflect a deliberate indifference to requests for habeas relief. In other words, it was reasonable for Warden Franco to delegate handling of habeas petitions to his assistant and to the NMCD Legal Department. As for Warden Franco's failure to inform Plaintiff about the appeal decision, Warden Franco presented evidence that although he may suggest revisions, he does not have the authority to change policy within Mr. Phillips' department. More importantly, Warden Franco had no supervisory authority over Mr. Phillips and could not direct how Mr. Phillips carried out his duties.[11] Therefore, Warden Franco cannot be held liable for Mr. Phillips' failure to inform Warden Franco or Hearing Officer Wagner about Plaintiff's appeal decision.

---

[11] Warden Franco testified:

> Q. At any point in time after you became the warden in an official capacity, do you recall participating in a revision of the Department of Corrections Policies and Procedures which govern inmate appeals?
> A. I am sure I did participate if it was—if it was up for review on that annual basis, I am sure I participated in it.
> Q. And you would have had the authority to suggest revisions or changes to the procedures and policies that relate to inmate grievances and appeals; is that correct?
> A. Correct.

(Supp. Resp. Ex. 1, Franco Dep. 13:5–17.)

3. Plaintiff has failed to establish Warden Franco's supervisory liability.

A plaintiff may establish that a supervisor is individually liable for a constitutional violation under § 1983 by demonstrating: "(1) the defendant promulgated, created, implemented or possessed personal responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional violation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). The plaintiff in *Dodds* brought a § 1983 suit, alleging that an Oklahoma sheriff, "violated [the plaintiff's] Fourteenth Amendment due process rights by depriving him of his protected liberty interest in posting bail." *Id.* at 1189. The district court denied the sheriff qualified immunity on summary judgment, and the sheriff appealed. *Id.* The Court of Appeals for the Tenth Circuit recognized that "Oklahoma law charged Defendant as sheriff with the responsibilities of running the county jail and accepting bail from ... arrestees." *Id.* at 1203. Moreover, the sheriff admitted that he allowed the policy of refusing to accept bail under certain circumstances that directly caused the plaintiff's wrongful incarceration. *Id.* Therefore, in *Dodds* the Tenth Circuit ruled that the sheriff was directly responsible for maintaining a facially unconstitutional policy that caused the constitutional injury. *Id.* at 1204.

Warden Franco contends that he was not Mr. Phillips' supervisor because Mr. Phillips was an employee of the NMCD administrative department. Warden Franco argues that, as a result, he cannot be held liable for the breakdown in Mr. Phillips' system to disseminate appeal decisions. Plaintiff counters that it was Warden Franco's duty to implement the appeal decision under Policy CD-090101, and that duty extended to making sure that Mr. Phillips notified him in a timely manner. However, this argument falls short in light of the evidence that Warden Franco was not Mr. Phillips' supervisor and that Warden Franco had no authority to create new NMCD

policies or change current NMCD policies. *See* Organization Chart (Orig. Reply Ex. G-1; Supp. Resp. Ex. 2, Phillips Dep. 21:8–11.) *See also Dodds,* 614 F.3d at 1206 (holding that the plaintiff had shown facts from which a reasonable jury could infer that the defendant knowingly created a substantial risk of constitutional injury to people like the plaintiff).

In regard to the Habeas Petition, Plaintiff has failed to show that Warden Franco's handling of habeas petitions caused Plaintiff's constitutional injury. Nor is there evidence showing that Warden Franco's policy of sending the Habeas Petition to NMCD's Legal Department without personally reviewing it was facially unconstitutional, as was the policy of denying bail in *Dodds*.

In sum, Warden Franco cannot be held liable under § 1983 for the failure to carry out the appeal decision because he and prison personnel were not informed of the appeal decision. Warden Franco was not responsible for Mr. Phillips' failure to send Plaintiff's appeal decision to the PNM hearing officers because Warden Franco was not Mr. Phillips' supervisor. Nor is Warden Franco liable for having his assistant forward habeas petitions to NMCD Legal Department without Warden Franco reviewing those habeas petitions. In the absence of knowledge of Plaintiff's appeal decision and the merits of the Habeas Petition, Warden Franco cannot be liable under § 1983 for violating Plaintiff's procedural due process rights under the Fourteenth Amendment.

B.     Plaintiff's Count II claim for violation of the Eighth Amendment.

As the United States District Court in New Mexico stated recently, "a prisoner's clearly established Eighth Amendment right of protection against cruel and unusual punishment is violated when he is held past his release date, as calculated pursuant to his operative judgment and state law, as a result of deliberate indifference." *Delgadillo v. Dorman*, Case No. 13 CV

1188 WJ/KK, 2015 WL 13651199, * 4 (D.N.M. Sept. 1, 2015) (Johnson, J.) (unpublished) (citations omitted) (noting that the clearly established weight of authority, including unpublished Tenth Circuit decisions and opinions from other circuits compels this conclusion).To prevail on an Eighth Amendment claim, a plaintiff must show (1) that the prison official had knowledge of the plaintiff's problem and thus of the risk that unwarranted punishment was being, or would be inflicted; (2) that the prison official demonstrated deliberate indifference to this problem by either failing to act or by taking only ineffectual action under the circumstances without penological justification; and (3) a causal connection between the plaintiff's problem and the unjustified detention. *Id.*

Although Plaintiff's Eighth Amendment rights were violated when he was held past his appropriate release date, Plaintiff's Count II claim against Warden Franco suffers from the same deficiency as his Count I due process claim. Warden Franco had no knowledge of Plaintiff's successful appeal or Plaintiff's meritorious Habeas Petition. Warden Franco reasonably relied on the NMCD procedures under which Mr. Phillips was responsible for notifying the prison officials of appeal decisions. *Id.* (finding that NMCD officials reasonably relied on NMDC policy in determining the plaintiff's parole term). By being unable to demonstrate that Warden Franco had knowledge that Plaintiff was being held beyond his appropriate release date, Plaintiff has not been able to show that Warden Franco acted with deliberate indifference to Plaintiff's plight. In the absence of knowledge and deliberate indifference, Plaintiff cannot prevail on his claim that Warden Franco violated his Eighth Amendment rights. Hence, the Court will also grant summary judgment in favor of Warden Franco on Plaintiff's Count II claim.

Both sides focus only on Counts I and II in the summary judgment briefing. Plaintiff did not address Warden Franco's general request in the Original Motion for dismissal of Count IV,

the First Amendment claim. Since there was no substantive argument made regarding the general request for dismissal of Count IV, the Court did not discuss the Count IV claim in this opinion. However, the Court has reviewed the briefs and evidence of record and finds that there is no evidence that prison officials failed to inform Plaintiff about his successful appeal in retaliation for exercising his right to appeal the disciplinary decision. Thus, the Court will also grant summary judgment on Count IV.

      IT IS ORDERED that GERMAN FRANCO'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY (Doc. No. 23) is granted, and Counts I, II and IV will be dismissed.

_____
SENIOR UNITED STATES DISTRICT JUDGE